Argued November 13, modified and remanded December 23, 1959

JONES ET UX *v.* EDWARDS ET UX

347 P. 2d 846

*James M. Blackford,* Eugene, argued the cause for appellants. With him on the brief was Clyde N. Johnston, Eugene.

*Donald W. Husk,* Eugene, argued the cause for respondents. With him on the brief were Harris, Butler, Husk & Gleaves, Eugene.

Before McALLISTER, Chief Justice, and PERRY, O'CONNELL and REDDING, Justices.

O'CONNELL, J.

This is a suit brought by the servient owner to enjoin the owner of an easement of right of way over plaintiffs' land from trespassing upon plaintiffs' land and from leaving gates open along the right of way.

The defendants, by way of counterclaim, seek a decree (1) ordering plaintiffs to remove two of six gates along the right of way, (2) establishing the width of the right of way at thirty feet, (3) requiring plaintiffs to refrain from interfering with defendants' use of the right, (4) requiring plaintiffs to maintain four of the gates (remaining after the removal of two as requested); and defendants seek such other relief as the court deems equitable.

The trial court in effect granted the relief prayed for in defendants' counterclaim and made other provisions in the decree adversely affecting plaintiffs. The plaintiffs appeal from this decree.

The easement was created by an instrument dated September 20, 1944, in which G. A. Maupin and Edith L. Maupin, plaintiffs' predecessors in interest were the grantors and the defendants were the grantees. The easement was described as follows:

> "A gateway road right of way over and across the following described real property, to wit

[description of grantors' land] as said road is now established and traveled * * *."

At the time the easement was created four gates crossed the right of way. Two gates to the west of the original gates were constructed later by plaintiffs. These two gates were ordered to be removed in the decree of the lower court. Plaintiffs contend that all of the gates are necessary to the efficient operation of their ranch; the defendants allege that the two westerly gates are unnecessary and constitute an unreasonable interference with their use of the easement.

It is also alleged by defendants that at the time the easement was granted to them, and for a long time prior thereto, the four gates then located on the land were left open a substantial part of the time. They deny that they leave open the four easterly gates, but admit leaving open the two westerly gates.

In their counterclaim defendants assert that the easement was granted to them for the "express" purpose of confirming the defendants' unlimited and unrestricted right to use the existing road for all purposes in connection with the defendants' land, and that it was contemplated that the way should be not less than thirty feet in width. It is alleged that "Plaintiffs have also constructed a new road that parallels portions of the road, the subject of defendants' right of way, which new road encroaches on portions of the right of way and plaintiffs have caused mud, rocks and debris to be cast upon the defendants' right of way so as to make the same virtually impassible, and have refused to remove said mud, rocks and other debris." This alleged conduct on the part of plaintiffs is relied upon as a justification for the use by the defendants of parts of the newly constructed por-

tion of the roadway which do not coincide with the original way.

Finally, it is alleged that plaintiffs have interfered with defendants' use of the right of way and that plaintiffs have threatened bodily harm to defendants and their business and social guests if they should deviate from the traveled portion of the way.

The plaintiffs provided several witnesses acquainted with the operation of ranches in the area to support their contention that the two westerly gates were necessary to the efficient us of their land. There was evidence to the contrary but as we appraise the entire record we are convinced that plaintiffs' position is more strongly supported. We hold, therefore, that plaintiffs are entitled to maintain the six gates along the right of way as long as the reasonable use of their land makes such gates necessary.

Apparently the trial court considered the scope of the easement to be controlled by the language "as said road is now established and traveled" and that no gates other than the original ones could be constructed without violating the terms of the grant. We do not so interpret the instrument. Unless the language of the creating instrument or the attendant circumstances at the time of the grant indicate a contrary intent the scope of an easement is not limited to the uses contemplated to be made at the time of or immediately after its creation, either with respect to the permissible uses of the easement or with respect to the permissible uses which may be made of the servient land by the servient owner. In the absence of a contrary intent both the uses of the dominant and servient owners are subject to adjustment consistent with the normal development of their respective lands. See *Bernards et ux v. Link and Haynes,* 199

Or 579, 248 P2d 341, 263 P2d 794 (1953). The servient owner "is privileged to make such uses of the servient tenement as are not inconsistent with the provisions of the creating instrument" and in the application of this principle the servient owner's use of his land "may vary as the respective needs of himself and the owner of the easement vary." 5 Restatement, Property (Servitudes) 3027, § 486. *City of Pasadena v. California-Michigan Land & Water Co.,* 17 Cal2d 576, 110 P2d 983, 133 ALR 1186 (1941); *Bishields v. Campbell,* 200 Md 622, 91 A2d 622 (1952); *Hodgkins v. Bianchini,* 323 Mass 169, 80 NE2d 464 (1948); *Hill v. Carolina Power & Light Co.,* 204 S C 83, 28 SE2d 545 (1943).

Admittedly, the language, "as said road is now established and traveled," could be interpreted to mean that neither the dominant nor servient owners were intended to have the privilege of expanding the respective uses of their lands. On the other hand, it is possible that the phrase was used simply to designate the location and width of the easement and to describe generally the character of the uses which the conveyees were entitled to make of it. The evidence in this case of the intention of the parties to the creation of the easement is scant. Under these circumstances we think that the instrument should be interpreted in the second sense indicated above, giving it the meaning of an ordinary easement, the scope of which is intended to change with changing needs.

■ There is no evidence as to the consideration paid by the conveyee for the easement other than the recital in the instrument itself. The original parties to the easement were related and it is likely that the consideration for the grant was not more than nominal. In the absence of evidence that substantial considera-

tion was paid for the easement, we shall not assume that by the use of the phrase referred to the grantor bargained away his privilege, and the privilege of his successors in interest, to develop the servient land in such a way as to require the construction of additional gates across the right of way.

Assuming, then, as we do, that the easement and the servient land are subject to adjustment with changing circumstances, our only task is to appraise the evidence for the purpose of determining the reasonableness of the addition of the two westerly gates. As we have already indicated, plaintiffs' evidence tends to show that the additional gates were needed. The two gates in dispute are at opposite sides of a portion of land on the westerly side of plaintiffs' ranch. This portion was not in use at the time of the trial but the testimony indicates that the most westerly gate was needed to keep out the cattle of a neighboring rancher to the west, and that the other gate on the easterly side of this small tract was necessary to keep plaintiffs' stock from going on to the land of a neighbor to the north.

The plaintiffs' statement of their need, supported by that of several of their neighbors, seems reasonable to us. The defendants produced little evidence to the contrary. Furthermore, there was little evidence produced by defendants to establish that the gates unreasonably interfered with their use of the easement. In cases such as this we can do no more than make a reasonable evaluation of the record. This we have done. We are aware of the fact that the trial judge viewed the premises, but since the basis for his judgment does not appear in the record we have no way of testing his conclusion against the weight of the evidence presented.

■ The easement was, by the terms of the instrument, limited to a "gateway road right of way." The dominant owner took the easement subject to this limitation and the inconveniences involved in using a way crossed by reasonably necessary gates. The two additional gates being necessary, the easement must be adjusted to the new and additional inconvenience.

■ Since the question of the reasonableness of the use of an easement and of the land which is burdened by it depends upon the circumstances in each case, the citation of authority is of little value. There are cases recognizing that the erection of gates at the termini and along a right of way is reasonable under the circumstances. *Wynn v. Powell,* 286 SW2d 367 (Ky 1956); *Jenkins v. Depoyster,* 299 Ky 500 186 SW2d 14 (1945); *Bishields v. Campbell,* supra; *Davis v. Winsor,* 165 Pa Super 212, 67 A2d 569 (1949).

In *Fendall v. Miller,* 99 Or 610, 196 P 381 (1921) this court recognized the right of the servient owner to erect gates across a right of way. In discussing the scope of the easement described as "a gateway to be used as a road of public easement over and through a certain strip of land now owned by us" the court said:

> "It may be assumed that, if the conveyance of the easement in question was 'of a gateway now owned by us' or a private way, that the owner of the servient estate, Richard Fendall, would have the right to construct gates *in addition to those existing at the time of the grant."* 99 Or at page 617. (Emphasis added)

This dictum supports the view that we have taken in the present case.

■ We next consider that part of the decree which perpetually authorizes the defendants to use the new

road constructed by plaintiffs, partly over the old right of way and partly along a different course adjacent to the old way. Before passing upon the validity of the position taken by the trial court, it may be noted that plaintiffs recognize the right of defendants to go upon plaintiffs' land whenever it is necessary to turn around or to permit other vehicles to pass. But the decree purports to give defendants a right to use the newly located way for all purposes embraced within the original easement. We do not think that the facts in this case justify such a decree. The general rule is clearly stated in 3 Tiffany, Real Property 334, § 806:

> "After the point or place at which, or line along which an easement is to be exercised has once been fixed, whether by express terms of the grant, or by agreement or acquiescence, one of the parties cannot change such location without the consent of the other."

This is not a case where the location of the easement was not fixed by the parties and where the court is called upon to fix it for them. The width of the easement was not specifically designated in the instrument creating it, but the instrument defined the easement "as said road is now established and traveled" so that its width was already established by prior use. Plaintiffs do not complain of defendants' use of any part of the original right including the portions which have been widened by improvements made upon it. However, they do complain of the use of the newly constructed road where it forms a distinct road separate from the original way. The defendants attempt to justify the use of this new course of the road on the ground that the old part of the road for which the newly constructed way was a substitute was rendered impassible by rocks, mud and debris

on the old road which, they claim, resulted from the construction of the new road. There was testimony to the effect that the construction of the new road caused some interference with the easement, but we do not think that evidence shows sufficient interference to justify a decree entitling the defendants to a permanent easement at a place where it did not exist when it was originally created.

It appears that it would harm plaintiffs very little if defendants continued their use of the new part of the roadway, but plaintiffs are entitled to limit the defendants to the easement originally created in the absence of some equitable ground for modifying the easement so created. See *Stamatis v. Johnson,* 71 Ariz 134, 224 P2d 201 (1950); *Youngstown Steel Products Co. v. City of Los Angeles,* 38 Cal2d 407, 240 P2d 977 (1952).

We hold, therefore, that the defendants are not entitled to use the newly constructed road where it is not superimposed upon the original right of way.

■  The decree of the lower court authorized the defendants and plaintiffs to replace the four original gates with effective cattle guards provided that in each case a gate was erected adjacent to the guard "for the movement of stock, persons traveling by horseback, and vehicles and equipment that might damage said cattle guards." Plaintiffs contend that a cattle guard cannot be constructed to assure the control of of sheep and goats. Defendants take the opposite view. We cannot determine from the record, and we do not know of our own knowledge, whether a cattle guard is effective in turning sheep, goats and other stock such as is raised on plaintiffs' ranch. Under these circumstances, the instrument creating the easement must control and we hold, therefore, that plaintiffs

have the right to maintain gates along the right of way and that defendants have no right to substitute cattle guards. The defendants have the duty to close the gates after opening them.

There was evidence that plaintiffs had interfered with defendants' legitimate use of the easement. Defendants are entitled to a decree enjoining plaintiffs from such interference.

The decree of the lower court is modified and the case is remanded with directions to enter a decree in accordance with this opinion. Neither party will recover costs.