# ADAMS,
*Appellant Cross-Respondent*
*v.*
## CROOK, et ux,
*Respondents Cross-Appellants.*
### (No. 7756, CA 11597)
602 P2d 1143

David W. Hittle, Salem, argued the cause for appellant - cross-respondent. With him on the briefs was Dye & Olson, Salem.

Richard L. Barron, Coos Bay, argued the cause for respondents - cross-appellants. With him on the briefs was Bedingfield, Joelson, Gould & Barron, Coos Bay.

Before Schwab, Chief Judge, and Tanzer and Roberts, Judges.

ROBERTS, J.

## ROBERTS, J.

Plaintiff brought suit in equity to establish a right of way by either prescriptive or implied easement across defendants' property. The trial court found an implied easement and plaintiff appeals, citing as error the trial court's limitation of the easement to agricultural use. Defendants cross appeal, citing as error the trial court's granting of the easement. We affirm.[1]

The record includes a drawing of the disputed portion of the roadway in question and some aerial photographs of the area, but no map depicting all of the servient properties and their location in relation to one another. Because we have had to discern the relative locations as best we can from this record, we do not attempt to give a specific description of the properties, but instead describe them generally and only insofar as is necessary for this opinion.

Plaintiff owns a piece of property which was once held in common ownership with defendants' property as well as two other parcels. Plaintiff bought his parcel from an heir of the common owner. There is no public thoroughfare between plaintiff's property and the county road which services the area. In order to gain access to his property from the county road, plaintiff must cross property which is not owned by him. A roadway which was in existence prior to the time of the partitioning of the property crosses the defendants' property as well as one other piece of property before connecting with plaintiff's property. Plaintiff has obtained a right of way over the other piece of property; this suit involves that portion of the roadway which lies on the defendants' property and makes the connection with the county road.

Plaintiff used the entire roadway without incident until plaintiff's request that the easement be put in writing caused a dispute with defendants over the extent, if any, of plaintiff's right to use the roadway.

[1] The issue of whether a prescriptive easement was created is not raised appeal.

[429]

The dispute prompted defendants to place a fence across the roadway, rendering it impassable. The question presented is whether, in conveying that portion of his property now owned by defendants, the common owner retained an implied easement over the roadway.

In *Winter v. Satchell*, 261 Or 517, 495 P2d 738 (1972), the Supreme Court said:

"* * *The creation of an easement of this character is implied from the circumstances attending the conveyance. We have held that such an easement will arise if a reasonable man holding the quasi-dominant estate would be justified in assuming that the right to continue the pre-existing use was a part of the bargain between the grantor and grantee. * * *" 261 Or at 518.

Whether or not the parties intended to create an implied easement is to be inferred from all of the circumstances surrounding the conveyance. *Jack v. Hunt et ux*, 200 Or 263, 267, 264 P2d 461, 265 P2d 251 (1954). Despite the fact that this is a suit in equity, we give considerable weight to the trial court's determinations based upon conflicting evidence. *Cheney v. Mueller*, 259 Or 108, 119, 485 P2d 1218 (1971). Our examination of the record leads us to agree with the trial court's finding of the implied easement.

In a decision letter, the trial court discussed each of the factors for determining whether an implied easement has been created as set forth in Restatement, Property, Servitudes, 2977, Creation § 476,[2] noting that there was no evidence presented as to the terms of the original conveyance and relying chiefly upon the

[2] These factors are as follows:

"In determining whether the circumstances under which a conveyance of land is made imply an easement, the following factors are important

"(a) whether the claimant is the conveyor or the conveyee,

"(b) the terms of the conveyance,

"(c) the consideration given for it,

"(d) whether the claim is made against a simultaneous conveyee,

"(e) the extent of necessity of the easement to the claimant,

necessity of the roadway to the original owner at the time of conveyance. In determining whether the easement is necessary, the court must be able to say "* * * that the parties as reasonable men contemplated and duly considered the continued use of the quasi easement claimed as necessary to a reasonable enjoyment of the dominant estate at the time of conveyance." *Jack v. Hunt et ux, supra* 200 Or at 269.

Testimony at the trial indicated that the road had been in existence since at least 1918 and had been used from that time until about 1930 to gain access to a house on the property now owned by plaintiff. Around that time the house fell into disrepair and was abandoned. The land now owned by plaintiff was pastureland and there is some evidence that it was used for grazing animals between the time when the house was abandoned and the time the property was first partioned in 1946. Defendants contend that because the testimony is sketchy as to the purposes for which the common owner used the road, the plaintiff has not carried his burden of showing that the roadway was necessary to the common owner at the time of conveyance. However, testimony indicated that the roadway remained apparent and bore continuous signs of use throughout the period. Further, testimony showed that the common owner had no other means of gaining access to the property.[3] Without the easement, the

"(f) whether reciprocal benefits result to the conveyor and the conveyee,

"(g) the manner in which the land was used prior to its conveyance, and

"(h) the extent to which the manner of prior use was or might have been known to the parties.

[3] There are currently two other means of access to the plaintiff's property. One is a logging road which is impassable due to weather for much of the year. The other is an easement granted the plaintiff over another portion of the original commonly owned property still held by an heir of the common owner. This easement is about 100 feet from the disputed roadway, but is virtually impassable without a roadway being cut and plaintiff has been unable to cut a roadway because of an unrelated boundary dispute between defendants and the owners of the property over which the easement passes.

[431]

common owner would have been unable to make any use of his land requiring the use of a vehicle. Moreover, the facts that the roadway had been used prior to the time of conveyance and that the use was apparent strengthen the inference that the parties intended to establish the easement. *Cheney v. Mueller, supra* 259 Or at 120.

Turning to plaintiff's contention that the court erred in limiting the easement to agricultural use we discover that neither this court nor the Supreme Court has previously been presented with the question of how to determine the scope of an implied easement.[4] However, in recognizing implied easements, the Supreme Court has quoted with approval from the Restatement of Property. *See Jack v. Hunt et ux, supra* 200 Or at 267-68 and *Cheney v. Mueller, supra* 259 Or at 118-19. Restatement, Property, Servitudes, 3020, Extent § 484 states

> "In ascertaining, in the case of an easement appurtenant created by conveyance, whether additional or different uses of the servient tenement required by changes in the character of the use of the dominant tenement are permitted, the interpreter is warranted in assuming that the parties to the conveyance contemplated a normal development of the use of the dominant tenement."

Comment b to § 484 provides the following explanation:

> "* * * The extent of an easement created by implication is to be inferred from the circumstances which exist at the time of the conveyance and give rise to the implication. Among these circumstances is the use which is being made of the dominant tenement at that time. Yet it does not follow that the use authorized is to be limited to such a use as was required by the dominant tenement at that time. It is to be measured rather by such uses as the parties might reasonably have expected from future uses of the dominant tenement. What the parties might

[4] *Cf. Firebaugh v. Boring,* 39 Or App 189, 591 P2d 421, *rev allowed* (1979), which discusses the scope of a prescriptive easement.

reasonably have expected is to be ascertained from the circumstances existing at the time of the conveyance. It is to be assumed that they anticipated such uses as might reasonably be required by a normal development of the dominant tenement. It is not to be assumed, however, that they anticipated an abnormal development. Hence, the scope of an easement created by implication does not extend to uses required by such development."

We examine the trial court's limitation of the easement in light of the Restatement test. As recited above, testimony at the trial showed that the roadway was originally used to gain access to a house now no longer standing. Since about 1930 the roadway has been used for various agricultural purposes, chiefly for the hauling of feed and livestock and for the maintenance of a water supply. Plaintiff's property was originally zoned forestry-grazing, but has been rezoned at his request to residential-agricultural. He testified that his 130 acres could probably be divided into five or six parcels depending upon sanitation standards.

The following illustration to Restatement § 485 provides some guidance in applying the restatement rule to the facts before us.

"4. A, the owner of Blackacre and Whiteacre, adjacent tracts of land, conveys Blackacre by deed to B. It has no access to a highway except over Whiteacre. At the date of the conveyance, Blackacre is unimproved pasture land, but it is later improved and cultivated as agricultural land and still later it is subdivided into city lots. The earlier development might reasonably have been anticipated by the grantor at the time of the conveyance; the later could not reasonably have been anticipated. A holding that the easement of way over Whiteacre created by implication upon the conveyance of Blackacre to B authorized a use for the benefit of Blackacre as agricultural land but not a use for its benefit as urban land is proper." § 485, p 3023.

We find that when the easement was created in 1946, it was foreseeable that the land, which had

apparently remained unimproved since the old home had fallen into disrepair, would be used for various agricultural purposes. We further find that it was unlikely that the parties at that time would foresee a subdivision. We, therefore, affirm the trial court's limitation on the use of the easement which we interpret as authorizing a single residence.

Affirmed.