Argued and submitted November 30, 1981,
as modified, affirmed March 8, 1982

LONG et ux,
*Appellants,*
*v.*
SENDELBACH et ux,
*Respondents.*

(No. E79-1995, CA A20201)

641 P2d 1136

James C. Farrell, P.C., Roseburg, argued the cause and filed the brief for appellants.

Joe E. Sendelbach, Roseburg, waived appearance for respondents.

Before Richardson, Presiding Judge, and Thornton and Van Hoomissen, Judges.

THORNTON, J.

## THORNTON, J.

Plaintiffs brought a declaratory judgment proceeding seeking a determination that they have unrestricted use and access across an existing roadway and bridge which lead from plaintiffs' property to property owned by defendants. The court upheld plaintiffs' right to use the roadway and bridge, but limited such use to agricultural purposes only. Plaintiffs appeal assigning this restriction as error. Defendants cross-appealed but subsequently elected to abandon their cross-appeal. Defendants filed no brief on appeal and waived appearance.

The essential facts may be summarized as follows: Plaintiffs' predecessors in title, W.A. Smick and Helen Smick, owned a large tract of land on the outskirts of Roseburg. In 1914, the Smicks conveyed about 27 acres of the tract to Charles Hager, defendants' predecessor in interest, together with a "strip of land for a right of way for access to the county road" across the northerly portion of the retained land. The deed also contained the following reservation:

> "The grantor herein to have the use of said right of way
> and of the bridge which the grantee herein agrees to build
> on said right of way."

Sometime immediately after purchasing the property, Hager built the bridge which was on the retained land and also built a residence on this property.

A map showing the general layout of the property involved in this dispute is reproduced on the following page.

As indicated on the map, the real property which originally belonged to the Smicks and is now owned by plaintiffs originally consisted of two parcels divided by Deer Creek, with a 6-acre parcel north of the creek and a 12-acre parcel south of the creek.

Some years later, the Smicks' successors in interest built a house on the north 6 acres of the property which Smick had retained. The south 12 acres, then in common ownership with the north 6 acres, was used for various purposes in connection with and by those people living on the north 6 acres. Those uses included gardening, raising

chickens, raising hay, raising cattle, storing lumber and equipment, pasturing horses and building horse trailers. The south 12 acres is and has been also used for the domestic water supply for the north 6 acres.

A map showing the general layout of the property involved in this dispute is reproduced below.

There is a small barn on the south 12 acres, most recently used as a chicken shed. At one point in the early 1970s plaintiffs' predecessors bulldozed a pad to build a barn. Use of the bridge by plaintiffs and their predecessors has been daily on almost a continual basis as far back as anyone can remember. Until just before this lawsuit was initiated, when plaintiffs began to build a house on the south 12 acres, neither defendants nor defendants' predecessors in interest had ever attempted or claimed the right to restrict the use by plaintiffs or their predecessors in interest. Disagreement appears to have been touched off by defendants' request that plaintiffs pay one-half the cost of repairing and remodeling the bridge.

Defendants bought their house and acreage in 1971 and have lived there since. Plaintiffs bought 18 acres and the house located on the north 6 acres in 1973, and lived there until after the complaint was filed. After the

complaint was filed, the plaintiffs completed the construction of a residence on the south 12 acres and presently live there. Also, after the complaint was filed plaintiffs divided their property into two separate parcels, 6 and 12 acres in size. The creek is the dividing line. The north 6 acres was sold to a third person not a party to this litigation. Plaintiffs reserved an easement for access to their 12 acres across the bridge. There is no other access to plaintiffs' property south of Deer Creek.

The trial judge, relying on *Adams v. Crook,* 43 Or App 427, 602 P2d 1143 (1979), ruled that defendants were entitled to limit the use of the road and bridge by plaintiffs to agricultural purposes only. *Adams* involved an implied easement. We held, *inter alia,* that an implied easement is limited in scope to the use contemplated when it was created, which includes a normal development of the property, and that where the easement was used for agricultural purposes, use for access to a subdivision is outside the implied scope.

Contrary to the conclusion of the trial judge, we conclude that *Adams* is not controlling here. We say this, first, because *Adams* involved an implied easement rather than an express written easement, as here, and, second, because the grant reservation here contained no restrictions of any kind.

■　　　The majority rule is that an easement granted or reserved by a written instrument in general terms, without any limitations as to its use, is one of unlimited reasonable use. It is not restricted to use merely for such purposes of the dominant estate as are reasonably required at the time of the grant or reservation, but the right may be exercised by the dominant owner for any reasonable purpose to which that estate may subsequently be used. Therefore, there may be an increase in the volume and kind of use of such an easement during the course of its enjoyment. *See* 25 Am Jur 2d, Easements and Licenses, § 74, 480 (1966). Oregon follows that general rule. *Jones et ux v. Edwards et ux,* 219 Or 429, 433, 347 P2d 846 (1959); *Gorman v. Jones,* 232 Or 416, 419, 375 P2d 821 (1962).

■　　　When the right of way is created by implication, the nature and extent of the right of way is measured by

reasonable expectations at the time the easement was created. When there is a written instrument reserving an easement in the grantors, the intent of the parties as shown by the language used is controlling. Restatement of Property, § 484 at comment b.

■       We conclude that (1) plaintiffs' grantors' reservation of a right to use the bridge and roadway which grantee was obligated to construct at his own expense, being in general terms and without limitation in the instrument, can be used by plaintiffs for any reasonable purpose and (2) the trial judge erred in limiting plaintiffs' use of the roadway and bridge to agricultural purposes only when there was no such limitation in the original reservation creating that right of way.

Remanded for entry of a decree modified in accordance with this opinion. The former decree is affirmed in all other respects. No costs to either party.