310 S.E.2d 216

**Olen R. HOFFMAN, et al.**

v.

**James SMITH, et al.**

**No. 15916.**

Supreme Court of Appeals of
West Virginia.

Dec. 14, 1983.

James A. Kent, Jr., Morgantown, for appellants.

James T. Dailey, Jr., Kingwood, Mike Magro, Jr., Morgantown, for appellees.

MILLER, Justice:

This is an appeal by Olen R. and Gladys Hoffman from an order entered by the Circuit Court of Preston County on October 12, 1982. By that order the court ruled that James and Connie Smith had a twenty foot wide right-of-way across the Hoffmans' farm. The court also ruled that the Smiths could replace gates along the right-

of-way with cattle guards.[1] On appeal, the Hoffmans claim that the court erred in allowing the Smiths to replace gates with cattle guards.[2] They also claim that the court erred in ruling that the Smiths' right-of-way was twenty feet wide when the evidence indicated that the actual width was less than twenty feet. We agree with the Hoffmans' contentions and we reverse the decision of the Circuit Court of Preston County.

The Hoffmans are the owners of a farm located in Preston County, which has been in their family for a number of generations. On July 1, 1907, M.G. Hoffman, the appellants' predecessor in title, granted to Joseph I. DeWitt, the Smiths' predecessor in title, a right-of-way across the Hoffman farm. The grant stated that the right-of-way was to be 165 rods (2722.5 feet) in length, but did not indicate a width. It provided that the exact location was to be determined by the parties. It also stated: "Where gates and bars are placed, they are to be maintained and *kept closed* by the parties hereto, their heirs and assigns." (Emphasis added)[3]

From the record, there appears to be no difficulty with regard to the use of the right-of-way through the ensuing years until the Smiths acquired the dominant estate in July, 1971. On or about August 21, 1981, Mr. Smith, without seeking prior court approval, removed the gate from the southern end of the right-of-way. On or about September 25, 1981, the gate at the northern end was torn down.

As a result of Mr. Smith's actions, the Hoffmans instituted an action in the Circuit Court of Preston County praying that the court establish the width of the right-of-way and that the Smiths be required to replace the gates that had been torn down.

■ With regard to the gate issue, we begin with the general rule that where one

1. A cattle guard is "a device consisting of a shallow ditch across which ties or rails are laid far enough apart to prevent livestock from crossing that is often used instead of a gate at a fence opening." Webster's Third New International Dictionary 354 (1970).

2. The parties have both argued that the effect of the court's order was to permit the Smiths who were the defendants below to replace existing gates with cattle guards. Another construction of the order is that the Smiths are permitted to replace gates with cattle guards, but if there are both gates and cattle guards, the Smiths no longer have an obligation to close the gates. The pertinent portion of the court's order provides:

"ORDERED and ADJUDGED that the Defendants may at their own expense install cattle guards in lieu of gates whenever fences cross the roadway on the 'Hoffman Farm', said cattle guards to be substantial and sufficient to turn livestock, and shall be maintained and kept in good repair by the Defendants; and it is further,

"ORDERED and ADJUDGED that in the installation of any cattle guards in lieu of a gate or gates, the Smiths or the Hoffmans, as may be the case, may also install a gate therewith, but the Smiths shall not be required to close such gate; and it is further,

"ORDERED and ADJUDGED that in the event the cattle guard or guards so installed by the Defendants do not adequately perform the functions for which they are intended, then the Plaintiffs may apply to the Court for restoration of the gate or gates, and upon proper showing the Smiths will be liable for any damages sustained as an incident thereto."

3. The grant provides:

"This Grant, Made this 1st day of July, 1907, between M.G. Hoffman and Pearl Hoffman, his wife, parties of the first part, and Joseph I. DeWitt, of the second part.

"Witnesseth: That for and in consideration of Twenty-five ($25) Dollars paid by the party of the second part unto Sarah R. Fairfax, for a grant of right of way bearing even date herewith, the said parties of the first part do grant unto the said party of the second part, his heirs and assigns, a right of way for a road from the Joseph I. DeWitt farm of one hundred and thirty-three acres in Portland District, Preston County, West Virginia, through the farm of M.G. Hoffman, containing about one hundred and forty-four acres, a distance of one hundred and sixty-five rods, the exact location of said right of way hereby granted to be determined by agreement between the parties hereto, but said right of way here granted is to make a continuous road and join up with the right of way granted by Sarah R. Fairfax unto Joseph I. DeWitt and M.G. Hoffman, by a contract bearing even date herewith. Where gates and bars are placed, they are to be maintained and kept closed by the parties hereto, their heirs and assigns.
"Witness the following signatures and seals.
    M.G. Hoffman.    (Seal)
    Pearl Hoffman.    (Seal)"

acquires an easement over the property of another by an express grant, the use of that easement must be confined to the terms and purposes of the grant. We discussed this point in *Shock v. Holt Lumber Co.*, 107 W.Va. 259, 262, 148 S.E. 73, 74 (1929):

> "There can be no question that the rights of one claiming an easement by express grant are limited within the scope of the privilege. The extent of the servitude is determined by the terms of the grant. 9 R.C.L., 787. 'Where an easement exists by express grant its use must be confined to the terms and purposes of the grant.' 19 C.J., 974. *Roberson v. Shepherd*, 33 W.Va. 307, 317 [10 S.E. 632]; *Watts v. Johnson, etc., Real Estate Corporation*, 105 Va. 519, 524, 54 S.E. 317. 'As has been previously stated, when a right of way has been acquired by grant, it must be used according to the terms of the grant; ...' Wood on Nuisances, section 164."

This basic rule has been followed in a number of jurisdictions. *See, e.g., Bitello v. Lipson*, 80 Conn. 497, 69 A. 21 (1908); *Swift v. Coker*, 83 Ga. 789, 10 S.E. 442 (1889); *Grafton v. Moir*, 130 N.Y. 465, 29 N.E. 974 (1892); 25 Am.Jur.2d *Easements and Licenses* § 73 (1966); 28 C.J.S. *Easements* § 75 (1941).

█ It has also been recognized that where a grant of a right-of-way allows the grantor to maintain gates across it, there is a duty imposed on the grantee to close the gates after passing through them. *Phillips v. Dressler*, 122 Ind. 414, 24 N.E. 226 (1890); *Bina v. Bina*, 213 Iowa 432, 239 N.W. 68 (1931); *Reed v. Flynn*, 205 Ky. 783, 266 S.W. 644 (1924); *Jones v. Edwards*, 219 Or. 429, 347 P.2d 846 (1959).

In *Bina v. Bina, supra,* the defendants, not unlike the Smiths, decided that it was unnecessary to close the gates because the cattle would not escape. The court enjoined them from leaving the gates open and stated:

> "Manifestly appellees were mistaken about their duty to shut the gates, because the condition in the deed in reference thereto is mandatory and in no way subject to appellees' discretion or judgment as to when or why the same should be closed. Even though there appears no necessity for closing the gates, nevertheless appellees must obey the mandate in the deed with reference to that condition of the grant. Without doubt appellees, when exercising judgment concerning the necessity for closing the gates, have persistently left the same open in violation of the deed's mandates." 213 Iowa at 436, 239 N.W. at 70.

█ The general rule is that unless there is specific language in the grant of an easement to the contrary, the grantor of a right-of-way over farm land retains the right to erect gates, provided they do not unreasonably interfere with the use of the easement. We stated in *Collins v. Degler*, 74 W.Va. 455, 461, 82 S.E. 265, 267 (1914):

> "Freedom in the use of the right of way over farming land is not unreasonably interferred [sic] with or restrained by the use of gates, when the grant of the right has no provision forbidding them. Why? Because the very character of the land makes gates essential to the proper and reasonable use of the way. They are, in other phrase, the custom of the business."

*See also* Annot., 25 Am.Jur.2d *Easements and Licenses* § 91 (1966); 28 C.J.S. *Easements* § 98(b) (1941); 52 A.L.R.3d 9 (1973).

█ Moreover, even where a right-of-way over farm property has been obtained by prescriptive use the servient owner has the right to erect gates in a reasonable manner. *Mitchell v. Bowman*, 74 W.Va. 498, 82 S.E. 330 (1914).[4]

---

4. In Syllabus Point 2 of *Mitchell v. Bowman, supra,* we said:
   "A way of passage from a public road to a farm, over intervening agricultural lands, acquired by prescriptive use while the servient lands were unenclosed and unimproved, may be properly subjected to gates not unreasonably established and maintained whenever the owners of the servient lands find it desirable to enclose the same for proper and ordinary use."

■ Thus, under the foregoing law with regard to agricultural property, even where there are no gates when the easement was granted and no express language in the grant permitting the servient owner to erect gates, the servient owner is still permitted to do so. Here, the right to maintain gates and the obligation to close them is expressly contained in the grant of the right-of-way. The Hoffmans clearly have the right to maintain the gates and to require that they be kept closed by the Smiths.

In their brief, the Smiths cite three cases in support of their position that they should be permitted to replace the gates on the Hoffman property with cattle guards. The first case, *Craig v. Kennedy*, 202 Va. 654, 119 S.E.2d 320 (1961), was decided under a Virginia statute which specifically authorized any person having an easement across the land of another to replace, at his own expense, any gate with a cattle guard. We have no such statute.

In the second case, *Jones v. Edwards, supra*, the court inferred that if it could be shown that a cattle guard was as effective as a gate in turning livestock, then such a device might be considered a lawful replacement for a gate. The court, however, refused to settle the point because there was an insufficient factual record.

In the third case, *Mize v. Ownby*, 189 Tenn. 207, 225 S.W.2d 33 (1949), there was evidence that gates placed across the right-of-way substantially interfered with the use of it by the owner of the dominant estate. The court concluded that under the circumstances of the case the gates could be replaced by cattle guards. The court's decision provided that if the cattle guards did not perform the functions for which they were intended then the owner of the servient estate could apply for a restoration of the gates.

In neither the *Jones* case nor the *Mize* case did the easement grant contain any express language regarding gates. Consequently, in these cases, the court was not controlled by the law of express easements where the language limits the scope of the grant. This is the rule that binds us in this case. The grant creating the easement across the Hoffman property specifically provided that the gates "are to be maintained and kept closed." We believe that the trial court erred in granting the Smiths the right to replace the gates with cattle guards.

We believe the law is too well settled with regard to upholding limitations contained in a written easement to permit us to ignore the language of the easement grant setting the maintaining of gates and the closing of the same. Furthermore, even if it were demonstrated that cattle guards are as effective as gates in securing livestock, there is the larger question that gates provide a measure of privacy that inhibits casual trespassers from making free use of the right-of-way.

The appellants' second assignment of error is that the trial court erred in ruling that the right-of-way was twenty feet wide. We initially observe that there was no language in the grant specifying the width. In Syllabus Point 3 of *Rhodes Cemetery Ass'n v. Miller*, 122 W.Va. 139, 7 S.E.2d 659 (1940), we said:

" 'Where the width of a right of way is not specified in the grant, not determinable therefrom, the scope and purpose of the deed creating it, the situation and use of the property, and the intent of the parties will be considered, so as to provide a reasonable, safe and convenient way for the purposes for which it was intended.' *Palmer v. Newman*, 91 W.Va. 13, 112 S.E. 194 [ (1922) ]."

*See State Road Commiss. v. Chesapeake & Ohio Railway Co.*, 115 W.Va. 647, 177 S.E. 530 (1934); *Wiley v. Ball*, 72 W.Va. 685, 79 S.E. 659 (1913).

Furthermore, we recognized in Syllabus Point 2 of *Rhodes Cemetery Ass'n v. Miller, supra*, that the practical use of the right-of-way by the parties would fix its location. *See* Annot., 28 A.L.R.2d 253, 263 (1953). In *Wiley v. Ball, supra*, we stated this rule in Syllabus Point 4:

"The servient tenement can not be burdened with the occupancy of a greater width than is reasonably necessary for the uses for which a right of way there-

over is reserved as an easement, where no width is defined in the reservation."

 In the case before us, Olen Hoffman stated that the existing road over the right-of-way was approximately fourteen feet wide except at a certain curve where it was approximately twenty feet wide. The defendant James Smith testified that the right of way averaged twelve feet wide through the appellants' property. He, however, requested that the court declare that the right-of-way was twenty feet wide.

It appears from the testimony of both parties that the right-of-way, as actually used over the years, was between twelve and fourteen feet wide, except at the curve mentioned by Olen Hoffman. We believe the way in which the right-of-way had long been used convincingly indicates that the fourteen foot width, except at the curve, was, in fact, roughly the width which the parties had initially intended and that that width is reasonable, safe, and convenient for the purposes for which the right-of-way was intended.

For the reasons stated, we conclude that the judgment of the Circuit Court of Preston County should be reversed and the case remanded so that the circuit court can take such action as may be necessary to ensure that the gates contemplated by the 1907 deed are respected and also to limit the right-of-way to fourteen feet except at the curve mentioned in the record where it is twenty feet wide.

Reversed and remanded with directions.