# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**Bruce E. Hyre Jr.,**
**Respondent/Defendant Below, Petitioner**

**vs.)  No. 19-0487** (Grant County 15-C-17)

**William W. Waddy, VI,**
**Petitioner/Plaintiff Below, Respondent**

**FILED**

**July 30, 2020**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Bruce E. Hyre Jr., by counsel Duke A. McDaniel, appeals the Circuit Court of Grant County's April 30, 2019, order denying his motion to alter or amend the order granting a permanent injunction, which prohibited petitioner from interfering with respondent's use of a disputed right-of-way. Respondent William W. Waddy, VI, by counsel David R. Collins, filed a response.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

According to the circuit court, respondent has a written easement appurtenant to the right-of-way at issue (approximately one-half mile), which is recorded among the land records in Grant County, West Virginia. Pursuant to the terms of the grant creating the easement, the use of the right-of-way extends beyond the roadway itself and provides that snow removal is necessary "outside the actual tracks of the roadway." The grant provides that the "historical gates that have existed on the roadway, and which presently exist, give a clear indication as to the actual width and use of the roadway." However, the width of the "roadway" is distinct from that of the "right-of-way." The circuit court further found that a gated opening of approximately sixteen feet existed at the time of the express grant creating the easement and that such gate is therefore an indication as to the actual roadway or, at a minimum, the actual use of the roadway, exclusive of snow removal and water breaks. In addition, according to the terms of the express easement, the gate has not historically been locked. The circuit court found "[t]hat, based upon the judicial view of the property, the gate posts are adequately constructed and do not require further reinforcement. That [respondent] now owns a tract of land on the far end of the roadway, together with the prescriptive rights of his predecessor in title."

1

The circuit court also found that respondent

> has proven, by clear and convincing evidence, that he used the right-of-way in an open and notorious and continuous manner for more than thirty years without the express or implied permission of the owner of the land. However, [respondent] does not require a prescriptive easement, as he has a recorded easement. [Respondent's] use of the easement is relevant; however, to show the width and scope of the written easement. That [respondent's] use, which includes, *inter alia*, commercial cattle farming for himself, his family, and his workers and timbering has required a minimum clearance of sixteen feet (16'), as is necessary for the ingress and egress of certain farm equipment, which exceeds the bounds of the current roadway itself. Additionally, [respondent's] use and express easement require additional width for the purpose of snow removal and waterbreaks [sic].

The circuit court specifically found respondent's testimony to be "highly credible and trustworthy."

In its order, the circuit court set forth that petitioner placed an electric gate across respondent's right-of-way and otherwise interfered with respondent's use of the right-of-way, which, by order entered on June 29, 2015, petitioner agreed to remove. Petitioner also agreed not to obstruct respondent's right-of-way or in any manner interfere with the free and unfettered use of the right-of-way. Petitioner also previously placed rocks and fencing within respondent's right-of-way and otherwise interfered with respondent's use of that right-of-way. On May 2, 2017, the circuit court entered an order setting forth petitioner's agreement to remove that fencing and again agreeing not to obstruct respondent's right-of-way. However, respondent sought an injunction in the instant action after petitioner erected a post and woven wire fence along the eastern side of the roadway. Petitioner then began erecting a similar fence on the western side of the roadway, which was enjoined by the circuit court by order entered on April 12, 2018. The circuit court determined that the

> woven wire fence is, at least in several locations, closer to the roadway than was the T-post fence which [petitioner] previously agreed to remove for obstructing [respondent's] right-of-way. That [petitioner's] actions demonstrate to this [c]ourt a pattern of harassment, obstruction, and interference with [respondent's] unfettered use of the right-of-way, from which [petitioner] agreed to refrain. That, were [petitioner] permitted to keep the woven wire fence at its current location and/or erect a fence on the other side of the roadway, this would—either by accident or design—have the effect of boxing in [respondent] and preventing him from moving equipment and removing snow, which is necessary for his livelihood.

Finally, the circuit court concluded that

> [g]iven the location of the fence, the right-of-way will be difficult or impossible to maintain regarding the moving of equipment, runoff drainage, or snow and ice removal, and any oncoming vehicles encountered by [respondent] or his workers

will not be able to pull over to allow the other to pass along sections of the roadway. If [petitioner] is not required to remove the existing fence and permanently enjoined from further construction of fencing within fifteen feet of either side of the now existing roadway, [respondent] will suffer irreparable harm. Whereas, by comparison, the harm to [petitioner] in requiring him to set back his fence is minimal. Based upon the [c]ourt's familiarity with the right-of-way in question from the judicial view and all the matters before it, the above-stated setbacks are reasonably necessary for [respondent's] use and the use that existed when the express easement was given. The [c]ourt finds that [respondent's] use, as set forth above, is consistent with the grant creating the easement.

In its conclusions of law, the circuit court found that the right-of-way at issue is an easement appurtenant and that respondent does not require a prescriptive easement, as he has a recorded easement. Further, respondent's use of the easement is relevant to show the width and scope of the written easement. Petitioner

is bound by the terms of the recorded easement, as well as the actual use made by [respondent] and his family over the decades. Here, that use requires a minimum clearance of sixteen feet . . . for ingress and egress, due to the width of certain equipment, as well as sufficient area for waterbreaks [sic] and snow removal.

Thereafter, the circuit court granted respondent's motion for a permanent mandatory, prohibitory, and prescriptive injunction; dismissed petitioner's counterclaim with prejudice; ordered that petitioner not obstruct respondent's right-of-way or in any manner interfere with the free and unfettered use of respondent's right-of-way; ordered that the gate from the public road to the right-of-way remain unlocked and no other gate be erected that will interfere in any way with respondent's free and unfettered use of the right-of-way; ordered that the gateway shall be no less than sixteen feet in width; ordered petitioner to remove any existing fence along the roadway beyond the location of the gate; prohibited petitioner from erecting any fencing or placing any obstruction within fifteen feet of the eastern or western edge of the now-existing roadway; and petitioner was ordered not to erect any fencing or place any obstruction within the roadway itself or within any distance of the now-existing roadway that would in any manner whatsoever interfere with or obstruct the now-existing water breaks. Each party was ordered to bear their own costs and expenses, including attorney's fees.

On March 25, 2019, petitioner filed a motion to alter or amend the order granting permanent injunction. However, the circuit court denied that motion by order entered on April 30, 2019. Petitioner appeals from that order.

With regard to motions to alter or amend a judgment, this Court has held as follows:

"""The standard of review applicable to an appeal from a motion to alter or amend a judgment, made pursuant to W. Va. R. Civ. P. 59(e), is the same standard that would apply to the underlying judgment upon which the motion is based and from which the appeal to this Court is filed." Syllabus point 1, *Wickland v. American Travellers Life Insurance Co.,* 204 W.Va. 430, 513 S.E.2d 657 (1998).'

3

Syllabus point 2, *Bowers v. Wurzburg,* 205 W.Va. 450, 519 S.E.2d 148 (1999)."
Syllabus Point 1, *Alden v. Harpers Ferry Police Civil Service Comm'n,* 209 W.Va.
83, 543 S.E.2d 364 (2001).

Syl. Pt. 3, *Veltri v. Parker*, 232 W. Va. 1, 750 S.E.2d 116 (2013). As to the circuit court's award
of a permanent injunction, our review is for an abuse of discretion:

> Unless an absolute right to injunctive relief is conferred by statute,
> the power to grant or refuse or to modify, continue, or dissolve a
> temporary or a permanent injunction, whether preventative or
> mandatory in character, ordinarily rests in the sound discretion of
> the trial court, according to the facts and the circumstances of the
> particular case; and its action in the exercise of its discretion will not
> be disturbed on appeal in the absence of a clear showing of an abuse
> of such discretion.

> Syl. pt. 11, *Stuart v. Lake Washington Realty Corp*., 141 W.Va. 627, 92 S.E.2d 891
> (1956).

*Mountain Valley Pipeline, LLC v. McCurdy*, 238 W. Va. 200, 204 793 S.E.2d 850, 854 (2016).

On appeal, petitioner sets forth eleven assignments of error but fails to include any argument headings, instead lumping his arguments into a single argument section with no apparent division between the assignments of error he touches upon therein.[1] Petitioner contends that the

---

[1] The assignments of error petitioner arguably touches upon in the argument section of his brief are the following:

1. The circuit court erred in entering the order granting the permanent injunction. The order is flawed on its face in that the order contains self-serving verbiage which was created by the attorneys for respondent and the order set forth findings of fact and conclusions of law that were not verbalized by the court and are self-serving for the benefit of respondent.
2. The circuit court erred in its conclusions of law set forth in the order of the court and would say that the conclusions of law are contrary to the law governing the facts in the instant case. . . .
4. The court erred in not conducting a proper view on the subject property. The court at the view walked to the beginning point of the right of way, immediately said, " looks like this fence needs to be moved," and when counsel for petitioner requested to view the total right of way, the court said, "looks to me like the fence needs to be moved." . . .
7. The court erred in granting the permanent injunction and in enlarging the right of way, which was granted to respondent's predecessors in title. The original right of way granted evolved from a transaction dated December 16, 2002, when Bruce E. Hyre, et ux, conveyed to Denver Riggleman, III, et al, a limited right of way. The granting instrument in the chain of title is abundantly clear that the right of way

circuit court's order, prepared by counsel for respondent, did not accurately reflect the circuit court's rulings made during the permanent injunction hearing. He argues that the hearing transcript "confirms that the verbiage in the court order was far beyond the rulings made by the court in these proceedings." Petitioner asserts that the property view was not done correctly due to the court's statement that it "looks like the fence needs moved." He argues that that statement evidences the court's preconceived opinion as to its ruling prior to a proper view of the right-of-way at issue. Petitioner contends that the circuit court further erred by asking respondent how much space was needed to move snow and granting additional width in the permanent right-of-way in accordance with the information provided by respondent. Without citing any law, petitioner asserts that West Virginia law is clear that when the right-of-way is "used by use or prescription" that the right-of-way cannot be enlarged, changed, or modified unless permission is granted by the owner of the servient estate. Petitioner further asserts that there is no question that respondent has enlarged the right-of-way granted to him by Sions (a former property owner), as licensed surveyor Curtis Keplinger found the right-of-way to be eight to ten feet in width, but respondent has enlarged it to fifteen feet.

Petitioner asserts that the location and use of the original farm lane are uncontradicted by any evidence. He argues that he, by deed of conveyance, conveyed to Riggleman on September 16, 2002, a right-of-way to gain access to the Riggleman property. That grant provides:

It is now and has been over the same courses, distances, including the same

---

granted was over the same courses and distances, including the same directions as the road currently exists. It further set forth that the fencing and historical gates that have existed on the roadway and which permanently exist give a clear indication as to the actual width and use of the roadway by the dominant parties through the servient real estate. Petitioner would say that the right of way was actually surveyed by a licensed land surveyor and a copy of the survey clearly shows that the existing right of way was between 8' and 10' in width.
8. John Waddy, respondent's father, testified that he owned a large tract of land that he used by prescriptive right and that he had conducted a large commercial farm operation on the land. John Waddy's testimony was that his family had used the right of way to the property, which he has owned for over 150 years, and that the right of way was never expanded beyond the same courses, distances, and directions from the original right of way granted to the Rigglemans from petitioner. The court erred in ruling the right of way could be expanded beyond the original use of the alleged prescriptive right of way of which had been used by respondent's family for over 150 years.
9. The court erred in disregarding the original intent of the right of way granted to respondent in that the evidence clearly shows that the right of way granted was granted only to gain access to the 25.71 acres respondent purchased from Sions.
10. The court erred in allowing the right of way to be enlarged to gain access to the 41.8 acres from John Harman Waddy, et ux, conveyed to William Wade Waddy, IV, by deed dated January 14, 2019.

directions as the roadway currently exist. The parties acknowledge that normal maintenance has been undertaken of the roadway in the past; that snow removal is necessary outside the actual tract of the roadway; and that fencing and the historical gates that have existed on the roadway and which presently exist give a clear indication as to the actual width and use of the roadway by the dominant parties through the servient real estate.

Thereafter, Riggleman conveyed 25.71 acres to Sions by deed dated August 1, 2003. On March 4, 2006, Sions and Riggleman conveyed the 25.71 acres Sions received from Riggleman, and the deed of conveyance set forth the exact same right of way that was in the Hyre and Riggleman deed. However, petitioner fails to cite to the record for this assertion. Again failing to cite to the record, petitioner asserts that it is uncontradicted that respondent began enlarging the right-of-way and brought an injunction proceeding against petitioner to prevent him from building a fence on his own property that was outside the limits of the right-of-way. After the injunction suit was filed, respondent's father conveyed to respondent 41.87 acres of real estate that was a portion of the 1,000-acre tract owned by the Waddys; that tract was adjacent to the 25.71 acres respondent purchased from Riggleman and Sions. He continues by arguing

> that the grant of the 41.87 acres to [respondent] was for the sole purpose of enlarging the farm lane which had been used by [respondent's] predecessors in title for over 150 years. The Waddys were attempting to enlarge the right[-]of[-]way from the original grant to gain better access to their farm operations conducted on their 1000-acre tract of real estate which they claim they now own.

In constructing the new, wider farm lane, respondent destroyed the integrity of the original farm road that was built almost entirely on a solid rock foundation.

In addressing *Hoffman v. Smith,* 172 W. Va. 698, 310 S.E.2d 216 (1983), petitioner again quotes portions of the case, including that where there is an express grant of an easement, "the use of that easement must be confined to the terms and purposes of the grant." Syl. Pt. 1, in part, *id.* He then paraphrased syllabus point 3 of *Hoffman*, presenting it as an accurate quote, which changed its meaning.[2] Petitioner again points to the survey he had performed by a licensed land surveyor that shows that the right-of-way originally granted was eight to ten feet wide. He argues that it is abundantly clear that the circuit court erroneously granted respondent a permanent injunction against petitioner that was contrary to the facts and law. He does not, however, provide further analysis of *Hoffman*.

Petitioner spends much of his brief quoting cases without providing any analysis regarding

---

[2]"""Where the width of a right[-]of[-]way is not specified in the grant, not determinable therefrom, the scope and purpose of the deed creating it, the situation and use of the property, and the intent of the parties will be considered, so as to provide a reasonable, safe and convenient way for the purposes for which it was intended." *Palmer v. Newman,* 91 W.Va. 13, 112 S.E. 194 [(1922)].' Syllabus Point 3, *Rhodes Cemetery Ass'n v. Miller,* 122 W.Va. 139, 7 S.E.2d 659 (1940)." Syl. Pt. 3, *Hoffman v. Smith,* 172 W. Va. 698, 310 S.E.2d 216 (1983).

the applicability of those cases to the instant case. He concludes by asserting that the circuit court ignored the law regarding rights of way and arbitrarily granted a permanent injunction when the decision was not supported by the law or evidence.

We note that petitioner sets forth eleven assignments of error. However, petitioner's brief is in clear violation of Rule 10(c)(7) of the West Virginia Rules of Appellate Procedure, which requires that

> [t]he brief must contain an argument exhibiting clearly the points of fact and law presented, the standard of review applicable, and citing the authorities relied on, under headings that correspond with the assignments of error. The argument must contain appropriate and specific citations to the record on appeal, including citations that pinpoint when and how the issues in the assignments of error were presented to the lower tribunal. The Court may disregard errors that are not adequately supported by specific references to the record on appeal.

Additionally, in an Administrative Order entered December 10, 2012, Re: Filings That Do Not Comply With the Rules of Appellate Procedure, this Court specifically noted that "[b]riefs with arguments that do not contain a citation to legal authority to support the argument presented and do not 'contain appropriate and specific citations to the record on appeal . . . .' as required by rule 10(c)(7)" are not in compliance with this Court's rules. *Id.*

Further, this Court has made clear that "'[a] skeletal "argument," really nothing more than an assertion, does not preserve a claim . . . Judges are not like pigs, hunting for truffles buried in briefs.'" *State, Dep't of Health v. Robert Morris N.*, 195 W. Va. 759, 765, 466 S.E.2d 827, 833 (1995)(quoting *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir.1991)). Indeed, "[a]lthough we liberally construe briefs in determining issues presented for review, . . . [issues] mentioned only in passing but are not supported with pertinent authority, are not considered on appeal." *State v. LaRock*, 196 W. Va. 294, 302, 470 S.E.2d 613, 621 (1996).

As noted above, petitioner's brief does not contain any argument headings; in fact, it is unclear which of petitioner's assignments of error are being addressed throughout much of his brief. Due, in part, to petitioner's failure to set forth argument or analysis related to the majority of his assignments of error, we cannot find that the circuit court erred in granting the permanent injunction. In addition, inasmuch as petitioner failed to set forth analysis applying the facts of the instant matter to his numerous case quotes and summaries, his argument regarding those cases is unclear. Further, during the February of 2019 hearing, the circuit court found that respondent's use and express easement required additional width for the purpose of snow removal and maintaining water breaks. Although the order entered by the circuit court was prepared by respondent's counsel, that is not reversible error. *State ex rel. Cooper v. Caperton*, 196 W. Va. 208, 214, 470 S.E.2d 162, 168 (1996). Moreover, respondent provided testimony that supported the circuit court's decision regarding the width of the easement at issue, including substantial testimony regarding the historical use of the easement. Thus, there was support for the circuit court's ultimate conclusion.

For the foregoing reasons, we affirm.

7

Affirmed.

**ISSUED:** July 30, 2020

**CONCURRED IN BY:**

Chief Justice Tim Armstead
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison

**NOT PARTICIPATING:**

Justice Margaret L. Workman

8