MIZE *v.* OWNBY.

(*Knoxville,* September Term, 1949.)

Opinion filed December 10, 1949.

O. M. Connatser, of Sevierville, Clyde W. Key, of Knoxville, for John B. Mize, complainant.

Thad D. Smith, B. A. Townsend and E. E. Creswell, all of Sevierville, and Homer A. Goddard, of Maryville, for Marshall Ownby, defendant.

Mr. Justice Prewitt delivered the opinion of the Court.

The Chancellor held that defendant Ownby had no right to substitute cattle guards for gates on an easement or roadway over the servient estate of complainant Mize for the benefit of the dominant estate of defendant Own-

by. The Court of Appeals reversed the decree of the Chancellor, holding that under the facts the substitution was lawful and proper. The cause is here on petition for *certiorari*.

Complainant and defendant hold titles to both tracts of land that stem from a common owner, J. E. Frazier, who, on January 1, 1915, sold 140 acres to defendant's predecessors in title. Following the description is the clause in controversy:

"Also a roadway 20 ft. wide beginning at large water oak leading N. W. to public road about ¼ mile in length to public road reversionary interest in grantor if it remains unused or public road is changed making it necessary to change said road, with the hereditaments and appurtenances thereto appertaining, hereby releasing all claims to homestead and dower therein."

Until this litigation arose, the parties construed this quoted portion of the deed as granting an easement. Two gates were erected—one at the common line of the parties and the other at the Ellejoy Road. The right of defendant Ownby to the use of this easement was not questioned. The Chancellor found that the gates had been maintained since 1931, although left open at times.

Defendant's family used motor vehicles in going to and from work and found it quite burdensome to open these two gates every time they entered or left his premises, and he approached complainant with reference to fencing the lane. This would have been quite injurious to complainant in handicapping his farming operations, in that it would have necessitated him to build gates in such lane to reach his barn, water his cattle, etc. Consequently, complainant refused to allow this. Then defendant thought of the plan of building cattle guards at

the termini of this roadway. He procured plans adopted by the University of Tennessee for such guards and was building one at the common line, over the protest of complainant, and was preparing to construct the other at the Ellejoy Road. Complainant requested defendant to remove the one under construction, but he refused to do so. The bill was then filed, and a mandatory injunction issued requiring the immediate removal of this guard and the restoration of the gate. A large volume of proof was taken. The Chancellor sustained the bill and made the injunction permanent.

The question presented is the right of the owner of the dominant estate to make alterations in the easement in question by the substitution of stock guards for gates. We quote the following from the opinion of the Court of Appeals:

"We can take judicial knowledge of the form of evolution that has taken place in barriers of this nature. First in use were a pole or bars placed across the road so as to close the gap. These were followed by gates swinging on hinges, which, of course, were not as cumbersome as the poles or bars. Is the next step the substitution of stock guards for gates?"

The Court of Appeals then held that the substitution of stock guards was reasonable and would serve the purpose of defendant without so much annoyance in opening and closing gates, and at the same time would not likely cause any damage or injury to complainant.

The record shows that Ownby approached Mize about the construction of the cattle guards and said:

"I told him I would pay the damage if any of his stock got crippled in it. If his did, mine would too, and I would take the thing out and use gates from then on."

The grant creating this easement did not provide for the nature of the barrier; it was not limited to a swinging gate. There is not much difference between a gate and a cattle guard. One is erected perpendicularly and cattle will not walk through it. The other is built horizontally and cattle will not walk over it. Both achieve the same objective.

Ownby testified of his personal knowledge of the effectiveness of these cattle guards. The only evidence to the contrary is that of Mize, who testified that he heard some men discussing an animal that was injured in one of them.

The Court of Appeals came to the conclusion that if the cattle guards were properly constructed and adequately maintained they would be more efficient than the gates.

In Jones on Easements, Section 827, p. 665, it is said:

"The owner of an easement cannot materially increase the burden of it upon the servient estate; but he may make repairs and improvements that do not, in substance, affect its character."

It is generally held that where an easement exists, gates may be erected in the absence of any provision to the contrary. *Long v. Garrison,* 1 Tenn. App. 211; *Luster v. Garner,* 128 Tenn. 160, 159 S. W. 604, 48 L. R. A., N. S., 87, Ann. Cas. 1914D, 769.

While there appears to be no case involving the right of substitution of a cattle guard for a gate, yet there are authorities that support it by analogy.

In *Hammond v. Hammond,* 258 Pa. 51, 101 A. 855, 857, L. R. A. 1918A, 590, 592, involving the right of the

212

owner of the dominant estate to bridge a stream across his easement, the Supreme Court of Pennsylvania said:

"The grantee of the free and uninterrupted use of a private road may improve it in such manner as to make it fit for the purpose expressed in the grant, and in so doing may construct a bridge over a ravine or creek, if it be done in such way as to cause the least practicable damage to the owner of the servient tenement; . . . . ."

*(4) Guillet* v. *Livernois,* 297 Mass. 337, 8 N. E. 2d 921, 112 A. L. R. 1300, involved the right of an owner of an easement to improve it. This was granted over the protest of others who desired to keep it unimproved. In the annotation it is said at pages 1303—1304:

"It is a general rule that the owner of an easement of way may prepare, maintain, improve, or repair the way in a manner and to an extent reasonably calculated to promote the purposes for which it was created or acquired, causing neither an undue burden upon the servient estate, nor an unwarranted interference with the rights of common owners or the independent rights of others."

██ We are of opinion that these principles are sound and applicable in the instant cause. The proof shows that defendant's family used motor vehicles in going to and from their work. The Court of Appeals gave defendant the right to install cattle guards, at his expense, according to the plans of the University of Tennessee. Defendant was charged with the duty of suitably maintaining such cattle guards, and if they become out of repair, or do not adequately perform the functions for which they were intended, complainant may apply to the trial court for a restoration of the gates, and defendant will be liable for any damages sustained as an incident thereto.

Writ denied.

All concur.