Norman **COOPER** and wife, Ina M. Cooper, Plaintiffs–Appellees,

v.

John C. **POLOS** and Diane Cleveland, Defendants–Appellants.

Court of Appeals of Tennessee, Eastern Section.

Jan. 30, 1995.

Application for Permission to Appeal Denied by Supreme Court May 1, 1995.

238

Eugene B. Dixon & Koella & Dixon, Maryville, for appellants.

Arthur B. Goddard & Goddard & Gamble, Maryville, for appellees.

## OPINION

SUSANO, Judge.

This suit seeks to enjoin the Defendant[1] John C. Polos from erecting and maintaining a gate across the Plaintiffs' right-of-way that traverses the Defendant's property. After sustaining the Plaintiffs' objection to testimony that a gate was necessary to keep trespassers from using the right-of-way, the trial court, sitting without a jury, permanently enjoined the Defendant "from interfering with the Plaintiffs' use of the twenty (20) foot right-of-way ... and permanently enjoined [them from] maintaining any gate, locked or unlocked, or any other structure upon said right-of-way which will impede or prohibit the free use thereof." The Defendant appeals, raising two issues:

1. Does the owner of a servient estate have a right to erect and maintain a gate across a dedicated right-of-way?

2. Did the trial court err in excluding, as immaterial, testimony that the gate was installed to keep trespassers out?

Because we disagree with the trial court's evidentiary ruling and because we believe that ruling requires that we vacate the Judgment below, we will direct our attention to the second issue. Our discussion of that issue will necessarily involve a consideration of the Defendant's other issue.

### I

The Defendant's property fronts on Tuckaleechee Pike ("the highway") in Blount County. A twenty foot easement runs through, and along the boundary of, the Defendant's property connecting properties located to the rear of his property to the highway. At some time prior to the filing of this suit, the Defendant's neighbor, Shields, with Polos' permission, erected a gate across the right-of-way on the Defendant's property. A driveway over the property of Shields' family, whose last name is Teffeteller, runs next

---

1. The Defendant John C. Polos is the sole owner of the servient estate. The Defendant Diane Cleveland has no ownership interest in the property. She was sued on the theory that she is Mr. Polos' agent. In the course of this Opinion, we will refer to the Defendants in the singular.

to and parallel with the right-of-way at issue in this case. It also connects to the highway. A gate had earlier been installed across the driveway on the Teffeteller property. When Shields installed the gate on the right-of-way over the Defendant's property, he placed it next to his own. The two gates, now side-by-side, were approximately 300 feet back from the highway. Together, they completely blocked the side-by-side ways running along the Teffeteller–Polos property line. After a temporary restraining order was entered in this case, the gate blocking the right-of-way over the Defendant's property was removed pending a resolution of this controversy.

The Plaintiff Norman Cooper testified that he or members of his family had owned their property since 1929, and that the easement over the Defendant's property had been owned by them since 1933. He acknowledged that there were two other gates across the right-of-way at points away from the Defendant's property, but claimed that they did not keep him from using the right-of-way. He further testified that a gate across the right-of-way at the place suggested by the Defendant would not significantly increase security because it would not connect with any existing fencing to the sides of the way. It was his belief that the natural foliage barrier to the right of the proposed gate, which he described as just "a little young growth," would not stop a trespassing vehicle from going around the gate. His wife testified that she has received calls from the Defendant's agent reporting trespassers on the easement, but has never seen any herself.

The first witness for the defense was the Defendant. His counsel sought to question him on the security rationale for the gate, but the trial court sustained an objection to that line of questioning on the ground that the need for security from trespassers cannot justify a servient property owner's erection and maintenance of a gate across an easement. Mr. Polos' counsel then made the following statement:

Judge, could I ask the Court to consider doing this: All of our witnesses are pertaining to the security aspect of this case and we not in any jest at all ... say that certainly people have the right ... to be secure in their own property as they are the right to be the guardian of the security of their animals, ... I would ask the Court in light of the fact that if the Court does not allow us to prove our case, then I am really not sure how—and I certainly don't want to waste the Court's time and these people are very serious about their defense of this case, all of [our] witnesses pertain to breaches in security. In order to make a record in this case for the Court of Appeals we would have to I guess offer the proof....

The trial court agreed to counsel's suggestion. After a brief recess, during which time the trial court read the parties' trial briefs, the court returned to the bench and reiterated its ruling excluding the testimony relative to trespassers and security. The trial court then announced that it was going to permanently enjoin the servient landowner from "interfering with the [Coopers'] use of the right-of-way in question" and would also permanently enjoin them from "maintaining any gate locked or unlocked or any other structure upon said right-of-way...." Finally, the trial judge invited Mr. Polos' counsel to make his offer of proof. He then left the courtroom.

Mr. Polos' attorney, pursuant to his offer of proof, presented the testimony of Mr. Polos and his neighbors, all of whom testified, outside the presence of the trial judge, that trespassers repeatedly used the easement. One neighbor testified that she had seen both motorcycle traffic and individuals on horseback using the easement without permission. Finally, Mr. Polos called a security expert, who testified that based upon his personal examination of the Polos property, the proposed gate was located in the "correct" location to make the best use of available natural barriers. The security expert also testified that even an unlocked gate in that location would serve as a deterrent to trespassers.

## II

We review this case *de novo* upon the record developed below. That record comes to us accompanied by a presumption of cor-

rectness which "carries the day" unless the evidence preponderates against the trial court's findings of fact. Tenn.R.App.P. 13(d). We owe no such deference, however, to the trial court's conclusions of law. *Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87, 91 (Tenn.1993).

 We believe the trial court erred when it ruled that evidence that the gate was erected to keep out trespassers was immaterial. We do not subscribe to the Plaintiffs' argument that the *only* reason which can support erection of a gate over an easement by the servient estate owner is the control of livestock. The law does not support such a narrow interpretation.

In *Cole v. Dych*, 535 S.W.2d 315 (Tenn. 1976), the Tennessee Supreme Court was confronted with the question of whether a mandatory injunction should issue requiring property owners to restore an easement of ingress and egress over their property which served as a roadway to a cemetery. In developing their property for commercial purposes, the servient owners had excavated some 75 feet of the road length "to a considerable depth ... rendering it impassable and unusable." *Id.* at 317. The Court found that it was an "indisputable fact ... that the general public used the roadway as a matter of custom and practice and without let or hindrance." *Id.* at 318. It concluded that the roadway was "an easement acquired by dedication." *Id.* at 319.

In the *Cole* case, it was argued that the maintenance of a gate by the owner of the property, the servient estate, was necessarily inconsistent with the easement. The court rejected that argument:

> The fact that all owners of the subservient estate maintained gates or other forms of obstructions to prevent unauthorized entry does not alter the character of this roadway. *The maintenance of gates is not necessarily inconsistent with the existence of an easement. Generally speaking, the owner of land subject to a right-of-way may maintain gates, if necessary to his use and enjoyment and where such obstructions do not unreasonably interfere with the use of the way.*

*Id.* at 320. (Emphasis added). The Court concluded that there was an easement "with the right implicitly reserved to maintain gates or other barriers which cause a minimum of inconvenience to the users ..." *Id.* The Court agreed a mandatory injunction should issue requiring the servient estate to restore the roadway. It did not require the owner of the property to remove the gate.

It is important to note that the gate implicitly approved by the Supreme Court in *Cole* was not maintained for the purpose of containing livestock, although it had been utilized for that purpose at some time in the past:

> At all times the Baskin Creek Road entrance [to the easement in question] was blocked off by removable bars, or a gate, or a chain, or a spiked treadle. These obstructions served various purposes. In earlier times they served to contain grazing cattle. In more modern times Mr. Maples operated an amusement park, or a miniature train system, and still later he and/or respondents used a portion of the area as a parking lot to which admission was charged. It is further suggested in the record that these and other obstructions served to keep intruders and joyriders from entering in the night-time. Regardless of the reason it apparently was blocked off at all times and much of the time was locked.

*Id.* at 317. (Emphasis added).

In the case at bar, the Plaintiffs argue that the erection of a locked gate across their easement—even if they were to receive a key to the lock—would constitute a "great burden" on them. Mr. Cooper testified that he is of advanced age and has hip problems, but one witness testified that Mr. Cooper often walks along the easement despite the two existing (apparently unlocked) gates he must open to gain access to the highway from his property. Mr. Cooper admitted under cross-examination, in fact, that he walked for exercise until fairly recently.

The Plaintiffs insist that "the only purpose of a gate is to allow entrance into an enclosure." They cite the case of *Mize v. Owenby* as holding that an easement owner has the right to insist that any gate across his or her

easement be replaced by a lesser cattle guard to prevent inconvenience to the easement owner. 189 Tenn. 207, 225 S.W.2d 33 (1949). That case does not support the Plaintiffs' argument to the extent suggested. In *Mize,* the Tennessee Supreme Court recited with approval the decision of the Court of Appeals in that case granting the defendant easement owner a right to replace an existing gate with cattle guards only upon the condition that he, the easement owner, pay for and maintain the cattle guards. *Id.* 225 S.W.2d at 35. However, the servient estate owner in that case was granted the right to "apply to the trial court for a restoration of the gates" if the cattle guards became out of repair or failed to perform their intended function. *Id.* We believe the decision in *Mize* is distinguishable from the case at bar because the gate and cattle guards in *Mize* were designed to keep *livestock in,* rather than unwanted *trespassers out.* *Cole* demonstrates that both purposes can be legitimate reasons for a gate.

In their brief, the Plaintiffs also cite the case of *Schmutzer v. Smith* for the proposition that an owner of a servient estate cannot erect a locked gate without the easement owner's permission. 679 S.W.2d 453 (Tenn. App.1984). *Schmutzer* arose from an easement owner's efforts to improve his easement with a roadway, and in fact stands for the proposition that "[o]ne owning a right-of-way may take the necessary steps in preparing an easement for proper use, including grading, graveling or paving." *Id.* at 455. The *Schmutzer* decision does not mention any gates, locked or otherwise, in its opinion, and we do not believe that case is relevant to the case at bar.

The Coopers also argue that "the courts of this state have recognized the right to maintain gates only for the ... efficient use and operation of the servient estate for farming purposes, particularly for the enclosing of livestock," and cite the case of *Hill v. Beaver,* 61 Tenn.App. 434, 454 S.W.2d 718 (1969), as support for this proposition. That case does not stand for the proposition cited. In fact the *Hill* court recognized the right of the servient property owner "to maintain gates or gaps at each terminus of the roadway and

at other points within the roadway if reasonably necessary to the efficient use and operation of her farm; ..." *Id.* at 722. The fact that the court referred to the "operation of her farm" cannot be read to automatically exclude non-farm related reasons for erecting a gate. The *Hill* court referred to "her farm" because that case involved a farming operation. Even at that, the *Hill* court did not limit its ruling so as to restrict the erection of a gate for the sole purpose of containing livestock. The *Hill* opinion supports only the narrower proposition that a servient landowner must obtain the easement owner's permission to place *locked* gates across an easement. *Id.* at 722. Since the Defendant has stated that he will give the Plaintiffs a key to the lock on the gate, we are not addressing a locked gate.

Finally, the Plaintiffs cite *Melton v. Donnell,* 173 Tenn. 19, 114 S.W.2d 49 (1938), for the proposition that servient landowners cannot erect and maintain a gate across an easement when "the owner of the dominant estate has used said right of way as an open and unobstructed right of way for" a long period of time, in that case 60 years. We cannot agree that the *Melton* case stands for such an absolute holding. The Supreme Court in *Melton* alluded, without negative comment, to the Court of Appeals' decision in that case as follows:

> The Court of Appeals reversed the chancellor upon the ground that since it appears without controversy that complainants have an easement in said road, and that the construction of said gates would interfere with their right of passage, the burden rested on the defendant to show that the gates were reasonably necessary as a protection to his farm, and that the proof failed to establish that fact.

*Id.* In affirming the decision of the Court of Appeals, the Supreme Court found that the gates in that case would be "a hardship and burden upon the owners of this easement." *Id.* 114 S.W.2d at 51. We believe that instead of adopting the absolute principle urged by the Plaintiffs, the ruling in *Melton* is in keeping with the holding in *Cole* that erection of a gate must be evaluated in terms of whether it is "necessary to [the servient

estate's] use and enjoyment," and whether the maintenance of the gate "unreasonably interfere[s] with the use of the" easement. *Cole* at 320. As in *Hill,* the court in *Melton* referred to the issue of a gate in the context of a farm because that is what the court was dealing with there. That does not mean that the reason for constructing a gate must be farm-related. *Cole* teaches otherwise.

■ In conclusion, we believe that the Tennessee Supreme Court's decision in *Cole* is controlling, and that the trial court erred when it ruled that evidence tending to show that the gate was erected for security purposes was immaterial. The Defendant has a right to introduce evidence tending to show that the erection and maintenance of a gate is "necessary to his use and enjoyment" of his property, and that it does "not unreasonably interfere with the use of the" easement. *Cole* at 320. It is clear beyond any doubt that the trial court's ruling on the evidentiary question "more probably than not affected the judgment." Tenn.R.App.P. 36(b). Therefore, the Judgment below must be vacated.

■ While we are authorized[2] to grant final relief in this case based on the law and the evidence heard below, we decline to do so. There are two reasons for this. First, the trial court has not heard all of the evidence we now have before us. Practically all of the Defendant's proof, and it is somewhat extensive, was excluded by the evidentiary ruling that we have found to be erroneous. Our jurisdiction is appellate—it is our job to review decisions made at the trial level based upon all of the admissible relevant evidence offered there. In this case we do not have such a decision. The trial judge should hear all of the admissible evidence and completely exercise his function before we are called upon to exercise ours.

The second reason we choose not to exercise our Tenn.R.App.P. 36(a) authority is because we do not believe to do so would be fair to the parties. The critical defense evidence was presented and cross-examined in the absence of the trial judge, and after he had rendered his decision. The case was over. While this evidence was developed to the point that we have determined it should have been admitted, we are not satisfied that evidence developed in this atmosphere is as probative as evidence presented and cross-examined in the "heat of battle" before the trier of fact. This case should be remanded for a new trial under the guidance of this Opinion.

The Judgment of the trial court is vacated, and this case is remanded for a new trial. The costs of this appeal are taxed to the Appellees.

FRANKS and McMURRAY, JJ., concur.