IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE

# A. L. BELCHER & ASSOCIATES, L.L.C., v. JOHN HARRISON and CHUCK ZINGALE

**Direct Appeal from the Circuit Court for Sumner County**
**No. 18124C, Thomas Goodall, Judge**

---

**No. M1998-00965-COA-R3-CV - Decided May 23, 2000**

---

A. L. Belcher & Associates sued its former employees, John Harrison and Chuck Zingale, alleging that they breached the non-compete clauses in their respective employment contracts. The employees appeal the trial court's order granting an injunction and an award of damages to the employer. Because the employer failed to satisfy its burden of proving that its former employees breached the non-compete clauses or caused the alleged damages, we reverse the trial court's decision.

**Tenn. R. App. P.3 Appeal as of Right; Judgment of the Circuit Court Reversed and Remanded.**

COTTRELL, J., delivered the opinion of the court, in which CANTRELL, P.J., M.S., and CAIN, J., joined.

Jerred A. Creasy, Nashville, Tennessee, for the appellants, John Harrison and Chuck Zingale.

William L. Moore, Jr., Gallatin, Tennessee, for the appellee, A. L. Belcher & Associates, L.L.C.

## OPINION

John Harrison and Chuck Zingale appeal the trial court's order granting an injunction and an award of damages to their former employer, A. L. Belcher & Associates.[1] Belcher based the underlying action against them on claims that they breached the non-compete clauses in their respective employment contracts. For the following reasons, we reverse the trial court's decision.

---

[1]Hereinafter A. L. Belcher & Associates shall be referred to as "Belcher." Its owner, Allen L. Belcher, who testified at trial, shall be referred to as "Mr. Belcher."

Appellee Belcher sold credit life insurance, extended warranty agreements, and related financial products to car dealerships, to be remarketed to purchasers of automobiles.[2] In effect, Belcher and its employees acted as middlemen between the insurers and the dealers.

In 1996, Belcher hired Appellants Harrison and Zingale to recruit new dealerships and develop existing accounts by, among other things, providing special training about their products to their clients' finance managers. Before starting their jobs, both new employees entered into identical non-compete agreements included in their employment contracts. The clause stated:

> Employee shall not during the term of the agreement, nor for <u>one year</u> (1) immediately following termination of this agreement, regardless of who initiated the termination, for himself, or on behalf of any other person, firm, partnership, or corporation, engage in any activity in competition, directly or indirectly, with the services, programs, or products of Employer, nor will he directly or indirectly, or [sic] himself or on behalf of, or in conjunction with, any other person, firm, partnership, or corporation, solicit, or attempt to solicit the business or patronage of any person, firm, partnership, or corporation which is a current or prospective customer of Employer, for the purpose of offering competing services, programs, or products similar to those offered by Employer or its affiliates or perform such other incidental business and services as Employer or its affiliates now engage in; nor will Employee disclose to any person any of the secrets, methods, or systems used by Employer and its affiliates in and about its business.

Belcher filed the underlying action on April 15, 1998, alleging that Mr. Harrison and Mr. Zingale had breached the covenants not to compete in their employment contracts by: (1) engaging in competing employment activity; (2) attempting and conspiring to solicit business from Belcher's customers; and (3) utilizing Belcher's records and reports to facilitate these activities. The complaint sought temporary and permanent injunctions to enforce the covenants not to compete, damages to compensate for loss of business, and attorney fees as contemplated by the employment contracts.

On May 26, 1998, the trial court enjoined Mr. Harrison and Mr. Zingale from engaging in any activity in competition with Belcher for one hundred and eighty (180) days and from disclosing any secrets, methods, or systems used by Belcher or its affiliates in their business.

The trial court held a hearing on Belcher's request for a permanent injunction and damages on October 29, 1998. In support of its claim that Mr. Harrison and Mr. Zingale breached their covenants not to compete, Belcher presented the testimony of David Bennett, a finance manager at a dealership with which Belcher had a business relationship, who knew Mr. Harrison and Mr. Zingale when they worked for Belcher. He testified that approximately one week after Mr. Harrison lost his job at Belcher, Mr. Harrison appeared at the dealership, having purportedly arranged a

---

[2]Belcher also sold contracts for theft deterrents and a program called NADW which monitors customer satisfaction for dealerships.

meeting with the dealership's general manager. Mr. Bennett stated that he saw Mr. Harrison and asked why he was there. Mr. Harrison answered, "Because he felt like he had always had a good relationship with [the general manager] and he wanted to keep that relation good because he felt like at a later date he would like to get back with [the general manager] to try to earn his business." When asked if Mr. Harrison indicated whether he was starting a new business, Mr. Bennett testified that Mr. Harrison stated, "He felt like that he and Mr. Zingale could start their own business or would like to start their own business, yes." However, Mr. Bennett admitted on cross-examination that Mr. Harrison did not specify when he would like to start his business.

Mr. Belcher also testified at the hearing. He stated that he had discharged Mr. Harrison in February or March of 1998 for inadequate production and that Mr. Zingale had resigned in April 1998. Mr. Belcher testified that shortly thereafter he met with Mr. Zingale, who told him that Mr. Harrison was very angry and would do what he could to hurt Mr. Belcher's business. He purportedly told Mr. Belcher that Mr. Harrison had made copies of Belcher's records and delivered them to the Insurance Commission. According to Mr. Belcher, Mr. Zingale confided that he resigned from Belcher because he was afraid of getting in trouble with the Insurance Commission if he continued working there. Mr. Belcher testified that when representatives of the Insurance Commission visited his business, they already had copies of a large number of Belcher's business records.

Mr. Belcher also testified that within weeks of Mr. Harrison's and Mr. Zingale's departures, Belcher began losing business and received demands from dealers for price adjustments and questions about an Insurance Commission investigation. He claimed he had lost "seven pieces of business" since Mr. Harrison and Mr. Zingale stopped working for him. As an example, he testified that he felt forced to lower the price on a vehicle service agreement after talking to a dealer (who owned two competing dealerships) and maintained his net loss was $25,000 in a year. He claimed that he also lost an NADW contract with the same dealer and some credit life insurance business with another, sustaining $35,000 and $30,000 semiannual losses respectively. Mr. Belcher testified that he also lost a $6,000 annual commission from a Honda dealership for unspecified reasons.

After this hearing, the trial court granted a permanent injunction enforcing the non-compete clause until it expired in March 1999. It also awarded Belcher damages of $80,500, and attorney fees of $4,341.40. This appeal ensued.

Because the court below tried this case without a jury, our review is *de novo* upon the record with a presumption of correctness of the findings of fact by the trial court. Unless the evidence preponderates against these findings, we must affirm. *See Cooper v. Polos*, 898 S.W.2d 237, 239-40 (Tenn. Ct. App. 1995); Tenn. R. App. P. 13(d). We owe no such deference to the trial court's conclusions of law. *See Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87, 91 (Tenn.1993).

In an action for breach of contract, the burden is on the plaintiff to prove all facts essential to his cause of action. *See Tedder v. Raskin*, 728 S.W.2d 343, 351 (Tenn. Ct. App. 1987); *Custom Built Homes v. G.S. Hinsen Co., Inc.,* No. 01A01-9511-CV-00513, 1998 WL 960287 at * 3 (Tenn. Ct. App. Feb. 6, 1998) (no Tenn. R. App. P. 11 application filed).

Of course, it is elementary that before a party to a contract may recover for damages caused by the breach of the other party, the party claiming damages for breach where such damages are denied, must make out a prima facie case to the effect that [the] claimant fulfilled his duties under the contract and the other party did not; or, the other party prevented [the] claimant from fulfilling his obligations under the contract. *See John P. Saad & Sons, Inc. v. Nashville Thermal Transfer Corp.*, 715 S.W.2d 41, 47 (Tenn.1986); *Bradford v. Gray*, 11 Tenn. 463, 464-65 (1832).

*Clement's Ready-Mix, Inc. v. Southern Asphalt Co.*, (no case number given), 1986 WL 12241 at \*1 (Tenn. Ct. App. Nov. 3, 1986) (no Tenn. R. App. P. 11 application filed).

Here, we find the evidence is insufficient to support the trial court's finding that a breach of the non-compete covenant occurred. Although Belcher presented proof through Mr. Bennett that Mr. Harrison intended to compete with Belcher in the future, no evidence in the record demonstrates that either Mr. Harrison or Mr. Zingale ever actually engaged in competition against Belcher, or, for that matter, engaged in any competitive business. Similarly, there was no proof that either defendant solicited clients of Belcher or that they disclosed information protected by the non-compete clause.[3] Thus, Belcher failed to prove that either Mr. Harrison or Mr. Zingale had, individually or jointly, engaged in competing employment activity, attempted to solicit business from Belcher's customers, or used Belcher's records for competitive purposes.

Belcher also presented insufficient evidence that any action by Mr. Harrison and Mr. Zingale caused the alleged damages. Mr. Belcher's testimony simply indicates that he lost business. However, nothing in the record ties that loss to the actions of Mr. Harrison or Mr. Zingale. Mr. Belcher did not testify or present other testimony that Mr. Harrison or Mr. Zingale took away his clients, engaged in a competing business, or disclosed protected information which resulted in lost business. On cross examination, Mr. Belcher summed up his claim as follows:

> The only assertion I'm making, sir, is that for all this period of time I had very little movement out there among my accounts. As soon as this happened, all of these pieces of business exited within like a forty-five day period.

Absent any proof that any specific conduct of Mr. Harrison or Mr. Zingale caused the loss of business or loss of profits, Belcher's claim must fail. *See Hogan v. DiCicco*, (no case number given), 1991 WL 139719 at \* 4 (Tenn. Ct. App. July 31, 1991) (perm. app. denied Oct. 4, 1993) ("A plaintiff is entitled to recover damages for breach of contract if defendant's breach of contract was the direct and proximate cause of the damages which plaintiff allegedly sustained, without the contributing fault of the plaintiff.").

---

[3] There is testimony that Mr. Harrison gave some records to the Insurance Commission, but no evidence that he shared any information, protected or otherwise, with any customer of Belcher.

Absent some evidentiary support on the issues of breach and causation, the award of damages cannot stand. The issue of the propriety of granting the permanent injunction enforcing the non-compete clause is moot, inasmuch as the order extended only until March 1999, before argument in this appeal. In light of these conclusions, we need not reach the remaining issues raised by Mr. Harrison and Mr. Zingale.

Accordingly, the judgment of the trial court is reversed. This case is remanded for any further proceedings which may be necessary. Costs of this appeal are to be taxed to the Appellee, A. L. Belcher & Associates, L.L.C., for which execution may issue if necessary.