IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs April 15, 2020


## JOHN E. COOLIDGE, JR. v. ELIZABETH M. KEENE, ET AL.


**Appeal from the Chancery Court for Hamilton County**
**No. 18-0732     Jeffrey M. Atherton, Chancellor**

---

### No. E2019-01278-COA-R3-CV

---

This appeal concerns whether certain easements were abandoned. John E. Coolidge, Jr. ("Mr. Coolidge") is a neighbor of Elizabeth M. Keene ("Ms. Keene") and Christopher P. Keene, II ("Mr. Keene") ("the Keenes," collectively). Pursuant to recorded easements, the Keenes may use a driveway to access an old garage encroaching on Mr. Coolidge's property. However, the garage was damaged by fire many years ago and never repaired or rebuilt by the Keenes' predecessors. When the Keenes sought to repair or rebuild the garage, Mr. Coolidge sued them in the Chancery Court for Hamilton County ("the Trial Court"). Mr. Coolidge argued that both the driveway and encroachment easements had been abandoned, largely because the garage was in ruins for such a long time. A bench trial was held. The Trial Court found that, notwithstanding the passage of time, the easements had not been abandoned, and the Keenes could proceed with their plans. Mr. Coolidge appeals, and the Keenes raise their own issues as well. Discerning no reversible error, we affirm the judgment of the Trial Court in all respects.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed; Case Remanded**

D. MICHAEL SWINEY, C.J., delivered the opinion of the court, in which ANDY D. BENNETT and CARMA DENNIS MCGEE, JJ., joined.

Adam U. Holland and Chanse J. Hayes, Chattanooga, Tennessee, for the appellant, John E. Coolidge, Jr.

William H. Horton, Chattanooga, Tennessee, for the appellees, Elizabeth M. Keene and Christopher P. Keene, II.

## OPINION

## Background

Mr. Coolidge owns the property located at 1113 Hanover Street, Chattanooga, Tennessee ("1113 Hanover"). The Keenes' property, 1115 Hanover Street, Chattanooga, Tennessee ("1115 Hanover"), borders Mr. Coolidge's property. Located partially on 1115 Hanover and partially on 1113 Hanover are the ruins of an old block garage that had been damaged by fire in 1992, at the latest. A driveway on 1113 Hanover leads up to the garage ruins.

Before 1975, both 1113 Hanover and 1115 Hanover were owned by the Coolidge family. In January 1975, the owners of the Coolidge property granted an easement to Richard E. Hudson and Marcia S. Hudson titled "Driveway Easement and Easement for Encroachment of Garage." In April 1975, 1115 Hanover was sold to the Hudsons. The deed referred to the easement thusly: "TOGETHER WITH driveway easement and easement for encroachment of garage. . ." The easement provided, in part:

> WHEREAS, the grantee herein is purchasing Lot 9 [1115 Hanover], Block 6, said Subdivision and appurtenant to said lot is a garage encroaching onto said Lot 8 [1113 Hanover], and access to said garage is over an existing concrete drive located on said Lot 8; and
> WHEREAS, it is the purpose of this instrument to grant unto said grantees an easement over said Lot 8, and an easement for the encroachment of the garage onto said Lot 8.
> NOW, THEREFORE, IN CONSIDERATION of One ($1.00) Dollar and other good and valuable considerations paid, the receipt of all of which is hereby acknowledged, We, CHARLES E. COOLIDGE, WALTER P. COOLIDGE, JR., and MARY COOLIDGE CISSNA, Devisees under the Will of Walter P. Coolidge, Sr., Deceased, do hereby sell, transfer and convey unto RICHARD E. HUDSON and wife, MARCIA S. HUDSON, a perpetual easement for purposes of egress and ingress over and along an existing driveway along the East line of said Lot 8, from the Northeast line of Hanover St. to the garage now located partially on said Lot 8 and partially on said Lot 9.
> ALSO CONVEYED HEREIN is a perpetual easement over that part of Lot 8 upon which a block garage is now located, said easement to be 13 feet by 45.5 feet, as shown by survey of Hopkins-Morton Engineering Company, Inc., dated December 26, 1974.

1115 Hanover has changed ownership multiple times. In November 2017, the Keenes—the current owners—bought 1115 Hanover. By the time the Keenes moved in, the garage had been in ruins for many years. Meanwhile, 1113 Hanover was sold to Mr. Coolidge by his grandfather in December 2015. Mr. Coolidge's deed contained the following language: "SUBJECT TO Driveway Easement and Easement for Encroachment of Garage."

When Mr. Coolidge found out that the Keenes were planning to repair or rebuild the garage, Mr. Coolidge tried to obtain a permit to demolish what was left of the garage. He was unsuccessful. The parties thereafter received notice of the garage's condemnation. The Keenes then obtained a permit to repair or rebuild the garage. Mr. Coolidge was, as he is now, opposed implacably to any attempts to restore the garage. In November 2018, Mr. Coolidge commenced this lawsuit by filing his Verified Complaint for Declaratory Judgement to Quiet Title and for Restraining Order against the Keenes in the Trial Court. In December 2018, the Keenes filed an answer and counterclaim. This matter was tried in May 2019. We next summarize the pertinent testimony from trial.

Timothy Dodd ("Mr. Dodd"), a licensed civil engineer, testified as an expert witness for Mr. Coolidge. Mr. Dodd evaluated the abandoned garage structure and prepared a report on it. Mr. Dodd testified to what was left of the garage:

> Masonry walls that are failing and failed footings. That's basically it. It appears that whatever masonry was above the level that remains was tossed into the center. You can see a lot of rubble and blocks thrown in there. I assume the wood frame structure burned completely out and was removed at some point in the last 20 or 30 years.

In Mr. Dodd's view, if one wished to rebuild the garage, "[y]ou would have to completely tear that out and place new footings and start from scratch."

Ben Hagaman ("Mr. Hagaman"), a licensed contractor, testified for the Keenes. Mr. Hagaman stated that he could restore the garage. Mr. Hagaman testified that one option was to "put rebar down in the CMU cells, fill them with concrete" and "dig a footing or a slab on the inside of that structure, clean out what's in there, and dig a footing or a slab on the inside of that and then build, basically, off the inside of those walls." However, Mr. Hagaman testified that the better option would be to start over from scratch. Mr. Hagaman estimated the cost of rebuilding the garage to be somewhere in the vicinity of $50,000 to $80,000.

Recalled to the stand on rebuttal, Mr. Dodd stated that Mr. Hagaman's restoration plan was a "very poor approach." Mr. Dodd emphasized, again, the great difficulty

involved in attempting to restore the garage. Mr. Dodd testified: "[A]t some point, you're going to cast concrete against an already failing and laterally moved wall; so you're going to have to shore that up. Well, to shore it up, you're going to be 10 feet over into Mr. Coolidge's property to do that."

Mr. Coolidge testified, also. Mr. Coolidge used the driveway to access the back of his property. In late 2017, he began having issues with the Keenes parking vehicles in the driveway. Mr. Coolidge testified to his view that the garage and driveway easements were long abandoned:

Q. Are you agreeable for the Keenes to come upon your property outside the easement area to rebuild the garage?
A. No.
Q. What are you asking [the] Court to do for you today?
A. Well, I'm asking the Court to remove the cloud over my title. This garage easement document is not -- the driveway easement and the easement for the encroachment of the garage is not what -- the way it's been used for the last 30 years is not what the original agreement was about. The building of the new structure, poured-concrete foundation, all of that is not what the original bargainers -- when they came to this agreement, that's not what the original bargain was about. So I'm asking the Court to clear my title and do away with this abandoned easement.

The deposition of Marcia Butler (the former Marcia S. Hudson) ("Ms. Butler"), a previous owner of 1115 Hanover, was entered into evidence. The garage had caught on fire when she and her husband lived at 1115 Hanover. Ms. Butler testified: "[O]ur insurance paid us for the garage. But it was not enough money to build the garage back. And they didn't give us the money. The money went to the mortgage company because the garage secured the loan for the house." Ms. Butler and her then-husband continued to use the driveway after the garage burned. However, they never rebuilt the garage during their time at 1115 Hanover.

Another deposition was entered into evidence, this time of Aaron Gustafson ("Mr. Gustafson"). Mr. Gustafson bought 1115 Hanover in 2009 and later sold it to the Keenes. Mr. Gustafson testified to the measures he took to "shore up" the garage and reclaim the driveway during his period of ownership:

Q. But apart from consulting with an architect, again, you would agree that you did not rebuild the garage?
A. Yes, we did not rebuild the garage.

-4-

Q. And so at the time that you sold -- other than the shoring up that you discussed earlier, at the time that you sold 1115 -- or conveyed 1115 Hanover Street to the Keenes, the garage foundation and remains were essentially as they were at the time that you had purchased the property?
A. Yes, apart from the shoring up, yes.
Q. When you talk about shoring up, you're talking about the support -- I'll just characterize them as support rods that were propped up against the foundation to prevent a portion of the foundation from collapsing?
A. Yes, we did that. And then I believe at least two times over the course of owning the property we sent in landscaping crews to clear the trees that had grown inside, with the underside of the foundation. So I don't know if that would be considered additional work to shore up or protect the property, but we did do that at least twice over the course of owning the property.

***

Q. Now, I understand you didn't do anything as far as shoring up -- other than the shoring up of the wall, you didn't do anything back behind the garage on the sloping hillside, did you?
A. No. Everything was either inside of the garage and -- and then the only other thing we kind of did is I actively worked over the course of, gosh, three years to reclaim the driveway from grasses and weeds and such, so that included, you know, a lot of weed whacking and mowing and bringing back the grass strip in the middle. The entire pad had been overgrown and had started cracking because plants were growing down into the cracks that had started. I reclaimed all of that kind of as I went. I think we had occasional landscapers that I elicited to help with that. . . .

Mr. Gustafson stated that he sometimes parked in the driveway, although it was rare. Mr. Gustafson stated that he never used what remained of the garage.

Returning to our review of the live testimony from trial, Ms. Keene took the stand. Ms. Keene testified to a meeting she and her husband had with Mr. Coolidge following some issues that arose between them over use of the driveway. Ms. Keene stated:

Q. And what was his reaction when you showed him the easement? What did he say?
A. When we showed Mr. Coolidge the easement, he -- I remember specifically he said that we should go to court and have the easement changed, saying that the easement was shared on our driveway.

-5-

Q. That's what he said when he read it?
A. Yes.
Q. And did he read the entire document?
A. I believe he did.
Q. Okay. Was anything else said at that meeting, at that point, that you can recall?
A. I remember us -- I mean, afterward I remember my husband and I saying, "I can't believe that he wants us to go and have this easement completely changed." I mean, we thought that it was strange and alarming.
Q. What's the size of that driveway? How narrow is it?
A. One size. I mean, like, one size, like, one car width.
Q. Is there any way two cars can pass each other on the driveway?
A. No, sir.
Q. Did you have any particular reason why this driveway's important to you from a safety standpoint?
A. Yeah. The street that we live on is Hanover Street. It comes right off of Hixson Pike. So people drive pretty fast on it. And as it is right now, we park on the street in front of our own house, typically, unless someone else is parked there. And I have to get my children out of the car and into the car on this busy street. It's just not ideal from a safety standpoint. We would prefer to pull into the driveway and be able to park in the driveway and load and unload the children.

Mr. Keene testified, as well. As to his understanding of the easements and his stance on Mr. Coolidge using the driveway, Mr. Keene stated:

Q. Is it your desire to build a garage within whatever parameters are set by the Court?
A. Whatever the Court says I can build is what I'll build.
Q. Okay. And what about the driveway? Tell the Court about what you think the logical solution is to the driveway.
A. I believe the driveway easement and the garage easement are two separate easements. My dictionary defines "perpetual" as forever and unchanging; so I don't understand why it's brought in question so much. I don't understand how one car could ever use the driveway while another one is. It's just simply not large enough to accommodate two cars. There's no way. Exclusivity would be implied just because of the way it's being used. There's no way for two cars to use it.
Q. Would you have any objection to Mr. Coolidge using the driveway to access the back of his property as long as he didn't block the driveway?
A. Absolutely not.

-6-

In June 2019, the Trial Court entered its memorandum opinion and order. The Trial Court found and held that the rights of the parties under the 1975 easement agreement continued to be dictated by the terms of that agreement; that the easements were not abandoned; and that, while the encroachment easement is exclusive to 1115 Hanover, the driveway egress and ingress easement is not. The Trial Court stated, in pertinent part:

[declaratory judgment]

The Easement Agreement creates a perpetual egress and ingress easement over and along an existing driveway. The Court finds that the further description of the driveway being from Hanover Street to the garage is an effort to clarify the location of the driveway. Therefore, the easement for egress and ingress is not limited strictly to accessing the garage present at the drafting of the Easement Agreement. The egress and ingress easement applies to the driveway located as described and is not terminated by the destruction of the garage.

***

The Easement Agreement creates a perpetual encroachment easement over that part of Lot 8 upon which a block garage is now located, further defined by the measurements of the garage at the time the Easement Agreement was drafted. The Court finds that the encroachment easement is exclusive to 1115 Hanover Street for the area described in the Easement Agreement and further defined by the February 2018 Hopkins Boundary Survey ("Hopkins Survey"). The encroachment easement is not limited to the garage that was standing at the time of the Easement Agreement drafting. In fact, the easement is not strictly limited to a garage being within that space. The pure language of the Easement Agreement is exclusive only in the defined measurements of encroachment into Lot 8 or 1113 Hanover Street.

***

[regarding Mr. Coolidge's request for injunctive relief]

[Mr. Coolidge] requests that [the Keenes] be immediately and permanently restrained or enjoined from coming onto 1113 Hanover Street for any purpose including use of the driveway and any efforts to rebuild the

-7-

garage. [Mr. Coolidge] also requests that [the Keenes] demolish the remains of the garage.

Among the factors considered when granting the relief requested are whether the Plaintiff showed with clear and convincing evidence that his rights would be violated or that he would suffer immediate and irreparable injury. As described herein, simply stated, they are not. The Court declines to grant injunctive relief against [the Keenes]. Owners of 1115 Hanover Street have the right to utilize the egress and ingress easement that exists along the driveway. Additionally, they have the right to demolish and rebuild the garage which exists on the encroachment easement.

\*\*\*

[whether the easements were abandoned]

The first *Hall* factor requires that the easement holder has acknowledged the easement and then disavowed its use. The evidence presented at trial was not persuasive that any owner of 1115 Hanover Street ever disavowed the use of either the egress and ingress easement or the encroachment easement. [Mr. Coolidge] asserts that by not repairing the garage after it burned and by paying no taxes or insurance on the garage, the encroachment easement has been "disavowed". [The Keenes] believe that the continued use of the driveway, even if intermittent, proves that the egress and ingress easement has not been disavowed. Additionally, activity by prior owners such as supporting the remaining garage walls and seeking advice from contractors regarding repairing or replacing the garage indicate that the encroachment easement was not disavowed. Finally, the deeds of both [Mr. Coolidge] and [the Keenes] identify the continued existence of the easement.

The Court finds that neither easement was disavowed. Although the garage was not repaired, the space upon which the garage sits is still occupied by the remains. This is use of the encroachment easement based on the literal reading of the Easement Agreement. The fact that the garage is currently in ruins does not cause the driveway easement to cease. The egress and ingress easement is for the purpose of accessing the 13 feet by 45.5 feet area behind both 1113 and 1115 Hanover Street. This area has been accessed as evidenced by landscaping and prior shoring of the garage walls. Also, the Court notes the continuous easement language in deeds for both 1115 Hanover Street and 1113 Hanover Street. Therefore, the egress and ingress easement is not disavowed.

Second, the easement holder's failure to maintain the easement is considered. [Mr. Coolidge] argues that the driveway became overgrown and the garage developed into a "compost pit" as stated in Aaron Gustafson's deposition. It is Mr. Coolidge's position that these facts indicate a failure to maintain both easements. However, [the Keenes] point out that the prior owner of 1115 Hanover Street, Aaron Gustafson, made efforts to shore up the remaining walls of the garage which is indicative of easement maintenance. Mr. Gustafson also explained in his deposition that the driveway was in "somewhat of a disarray" when he moved into the house and that he worked to improve its condition.

Looking again to the specific language of the Easement Agreement, the encroachment easement is clearly indicated by the remaining block walls of the garage. Additionally, despite prior evidence of overgrowth in the driveway, the egress and ingress easement is now maintained. The Court, therefore, finds that the degree of maintenance in this case, albeit minimal, resulted in [Mr. Coolidge's] failure to meet his clear and unequivocal burden of proof.

Next, the Court will contemplate whether the easement holder acquiesced in acts of others that may have reduced the utility of the easement. The parties offer little proof or argument on this point. The only applicable evidence is [Mr. Coolidge's] mention of the continued lack of garage repair through multiple owners of 1115 Hanover Street.

The Court finds in this case that each successive purchase of 1115 Hanover Street is not indicative of acquiescence to lack of repair efforts of a prior owner. For there to be acquiescence by an easement holder as in the meaning of *Hall v. Pippin* there must be acts by others during the time of that easement holder's grant. The purchase of property is not a form of acquiescing.

The fourth *Hall* factor is the placement of a permanent obstruction. There is no evidence in this case that there was a permanent obstruction placed across the driveway. [Mr. Coolidge's] best argument was the development of overgrowth. The Court finds that this is not a permanent obstruction because overgrowth does not meet the threshold of permanent, and the overgrowth has been removed.

Finally, the Court is asked to consider whether alternative access was developed by the easement holder. There was no evidence put forth that indicated any alternative access to the area defined in the encroachment easement.

The five *Hall* factors cover the considerations outlined in *Cottrell v. Daniel* with greater specificity. Through analyzing the five factors in *Hall v. Pippin* it is clear that there was not an intent to abandon the easement,

there was no positive showing of intent to abandon, there were no external acts by which intention was carried into effect, and there was no clear and unmistakable affirmative act indicating repudiation.

***

[whether the driveway easement is exclusive to 1115 Hanover]

The Court disagrees with [the Keenes'] proposition that the driveway egress and ingress easement is exclusive. Mr. Coolidge and any future inhabitants of 1113 Hanover Street can use the easement to access the back of their house without interfering with the easement use of those living in 1115 Hanover Street. However, the Court does agree that the encroachment easement is exclusive to 1115 Hanover Street, as both property owners cannot occupy the same space at the same time. While the egress and ingress easement accommodates mutual use, the encroachment easement for a structure does not.

***

[what may be built on the encroachment easement]

Finally, [Mr. Coolidge] asserts that because there is interest on the part of [the Keenes] to rebuild a garage with the possibility of other functions, namely a mother-in-law suite, that this is a forfeiture of the easement. Also, *Mize v. Owenby*, 189 Tenn. 207, 225 S.W.2d 33 (1949) is cited in support of a limitation as to changes which may increase the burden upon an easement.

As stated before, the encroachment easement is not written to be exclusively for a garage, but is for the purpose of the use of a 13 feet by 45.5 feet area. The Court does not venture to assume what Mr. and Mrs. Keene can obtain a building permit for. The announced representation of [the Keenes'] counsel at trial was that to avoid the risk of changing the apparent nature and use of the easement, only a garage would be rebuilt. For the benefit of improving the relationship between the parties, the court recommends this decision. However, there is no specific restriction within the easement itself as to what structure may occupy the space described in the future. It simply identifies the structure that was present when the easement was conveyed. The Court does agree with [Mr. Coolidge's] concern regarding the increased burden upon the egress and ingress easement. The Easement Agreement implies, if not expressly states, that

-10-

use will involve traffic equivalent to the egress and ingress of vehicles to a garage. Therefore, regardless of what [the Keenes] choose to build on the area of the encroachment easement, it must not increase the burden upon the driveway easement beyond what would be expected of egress and ingress to a garage.

(Internal citations and footnotes omitted). Mr. Coolidge timely appealed to this Court.

## Discussion

Although not stated exactly as such, Mr. Coolidge raises the following three issues on appeal: 1) whether the Trial Court erred in declining to find that the easements were abandoned; 2) whether the Trial Court erred in not defining the scope of the encroachment easement as being limited to a block garage within the designated encroachment area; and, 3) whether the Trial Court erred in declining to grant Mr. Coolidge's request for injunctive relief preventing the Keenes from trespassing on his property in the future to rebuild the garage. The Keenes raise two separate issues, restated slightly as follows: 1) whether the Trial Court erred in finding that the driveway portion of the easement is for mutual use; and, 2) whether the Keenes should be awarded attorney's fees incurred in this appeal, which they contend is frivolous.

Our review is *de novo* upon the record, accompanied by a presumption of correctness of the findings of fact of the trial court, unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d); *Bogan v. Bogan*, 60 S.W.3d 721, 727 (Tenn. 2001). A trial court's conclusions of law are subject to a *de novo* review with no presumption of correctness. *S. Constructors, Inc. v. Loudon County Bd. of Educ.*, 58 S.W.3d 706, 710 (Tenn. 2001). To the extent the abuse of discretion standard is implicated in this appeal, "[a]n abuse of discretion occurs when the trial court causes an injustice by applying an incorrect legal standard, reaches an illogical result, resolves the case on a clearly erroneous assessment of the evidence, or relies on reasoning that causes an injustice." *Gonsewski v. Gonsewski*, 350 S.W.3d 99, 105 (Tenn. 2011).

Beginning with Mr. Coolidge's issues, we first address whether the Trial Court erred in declining to find that the easements were abandoned. "An easement is a right an owner has to some lawful use of the real property of another." *Pevear v. Hunt*, 924 S.W.2d 114, 115 (Tenn. Ct. App. 1996) (citing *Brew v. Van Deman*, 53 Tenn. (6 Heisk) 433 (1871)). There are a number of ways an easement can be created in Tennessee, including by these methods: (1) express grant, (2) reservation, (3) implication, (4) prescription, (5) estoppel, and (6) eminent domain. *Id*. at 115-16. The easements in this case were created by express grant.

Mr. Coolidge argues that the easements were abandoned. Tennessee law provides that "[t]he party asserting abandonment of an easement must prove it by clear, unequivocal evidence." *Hall v. Pippin*, 984 S.W.2d 617, 620 (Tenn. Ct. App. 1998). Thus, the proper standard in an abandonment of an easement case is clear and unequivocal. Clear and convincing evidence and clear and unequivocal evidence are one and the same. *See Gambill v. Hogan*, 207 S.W.2d 356, 360-61 (Tenn. Ct. App. 1947) (equating "clear and convincing evidence" to "clear and unequivocal evidence" and "clear, cogent and convincing evidence"). "Clear and convincing evidence means evidence in which there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence." *Hodges v. S.C. Toof & Co.*, 833 S.W.2d 896, 901 n. 3 (Tenn. 1992).

Tennessee law is well-settled regarding abandonment of an easement. An easement may be abandoned, but the party attempting to prove abandonment must show both "an intention to abandon the easement [and] also external acts carrying that intention into effect." *Hall*, 984 S.W.2d at 620. Mere nonuse of the easement "is not sufficient, by itself, to prove abandonment. Nonuse must be coupled with proof that the easement holder or holders intended to abandon the easement." *Hall*, 984 S.W.2d at 620-21. The required external acts necessary to prove abandonment may be "either a single act or a series of acts." *Hall*, 984 S.W.2d at 621. Courts may consider several factors in making a determination of whether an easement has been abandoned, including:

> (1) statements by the easement holder acknowledging the easement's existence and disavowing its use, (2) the easement holder's failure to maintain the easement in a condition permitting it to be used for access, (3) the easement holder's acquiescence in the acts of others that reduce the utility of the easement, (4) the easement holder's placement of a permanent obstruction across the easement, or (5) the easement holder's development of alternative access in lieu of the easement.

*Id.*[1]

In support of his contention that the easements were abandoned, Mr. Coolidge points to the following actions taken by the Keenes' predecessors: (1) accepting insurance proceeds after the garage burned down but not using those funds to rebuild the garage; (2) not paying property taxes on the garage since 1993; (3) failing to rebuild the garage for over thirty years; and, (4) leaving the encroachment area in such a state that it

---

[1] While these factors were applied to an unrecorded easement in *Hall*, we regard them as relevant for consideration of a recorded easement, also. *See Porter v. Freedle*, No. M2001-01892-COA-R3-CV, 2002 WL 1315555, at *3 n. 2 (Tenn. Ct. App. June 18, 2002), *Rule 11 appl. perm. appeal denied Dec. 2, 2002*. The parties and the Trial Court applied these factors, as well.

was used as a compost pile. The Keenes, on the other hand, point to the following evidence in support of their view that the Trial Court was correct in finding that the easements were not abandoned: (1) the easements were documented in the multiple deeds for 1115 Hanover over the years; (2) there was no hint that any owner of 1115 Hanover ever disavowed the easements; (3) the original easement owners, the Hudsons, continued to use the driveway even after the garage burned; and, (4) the Gustafsons shored up the garage walls, kept the driveway cleared, and occasionally used the driveway for parking and access. The Keenes also observe, correctly, that non-use alone is insufficient to prove abandonment of an easement.

Mr. Coolidge's evidentiary burden for abandonment is that of clear and convincing evidence. Mr. Coolidge's argument appears to boil down to this: the garage was the very point of both the driveway and encroachment easements, and once it burned down, the easements terminated, especially after the passage of so many years without the garage being repaired or rebuilt. While Mr. Coolidge argues that he really is not just resting on non-use to prove abandonment, that is what his argument amounts to in substance. An easement holder's mere non-use of an easement does not, on its own, prove abandonment. This is true even after the passage of many years. The Trial Court made detailed factual findings, and the evidence does not preponderate against any of those findings. In our judgment, the combined facts do not rise to the level of clear and convincing necessary to prove abandonment. We affirm the Trial Court as to its conclusion that the easements were never abandoned.

We next address whether the Trial Court erred in not defining the scope of the encroachment easement as being limited to a block garage within the designated encroachment area. Regarding the scope and purpose of an express easement, this Court has stated:

> An easement created in a deed, such as the easement at issue in this case, is an express easement. *Shell*, 2014 WL 118376, at *4. In construing an instrument creating an easement, the court must "'ascertain and give effect to the intention of the parties.'" *Id*. (quoting *Burchfiel v. Gatlinburg Airport Auth.*, No. E2005-02023-COA-R3-CV, 2006 WL 3421282, at *3 (Tenn. Ct. App. Nov. 28, 2006)). The intention of the parties regarding the purpose and scope of an express easement is determined by the language of the deed. *Id*. The dominant estate's "use of the easement must be confined to the purpose stated in the grant of the easement." *Columbia Gulf Transmission Co. v. The Governor's Club Prop. Owners Ass'n*, No. M2005-01193-COA-R3-CV, 2006 WL 2449909, at *3 (Tenn. Ct. App. Aug. 21, 2006).

*Halbrooks v. Durieux*, No. M2013-00958-COA-R3-CV, 2014 WL 2999580, at *9 (Tenn. Ct. App. June 30, 2014), *no appl. perm. appeal filed*.

The easement in this case does not specify what sort of structure must be built in the encroachment area. The easement referred to the garage, but it did not limit the encroachment area to use for a garage. However, any structure other than a garage would need to comport with the same level of burden on the driveway associated with a garage. Thus, while the Keenes may not enlarge the scope of the easement, neither are they limited to building a garage. We affirm the Trial Court in its conclusion that the easement does not dictate that a garage is the only structure that may be built in the encroachment area.

The third and final issue of Mr. Coolidge's that we address is whether the Trial Court erred in declining to grant Mr. Coolidge's request for injunctive relief preventing the Keenes from trespassing on his property in the future to rebuild the garage. "A trial court's decision regarding whether to grant injunctive relief is reviewed under an abuse of discretion standard." *Vintage Health Res., Inc. v. Guiangan*, 309 S.W.3d 448, 466 (Tenn. Ct. App. 2009) (citing *Bd. of Comm'rs of Roane County v. Parker*, 88 S.W.3d 916, 919 (Tenn. Ct. App. 2002)). With respect to those measures an easement holder may take to repair or keep up his or her easement, this Court has discussed:

> Absent an agreement to the contrary, an easement holder "has both a right and the duty to maintain an easement so that it can be used for its granted purpose[.]" 28A C.J.S. Easements § 227; *see also* 25 Am. Jur. 2d Easements and Licenses § 72. "The owner of the dominant estate may do whatever is reasonably necessary to the enjoyment of the easement and to keep it in a proper state of repair. . . ." *Hager v. George*, No. M2013-02049-COA-R3-CV, 2014 WL 3371680, at *5 (Tenn. Ct. App., filed July 8, 2014) (quoting 28A C.J.S. Easements § 227). The easement holder may even "enter the servient estate in order to maintain, repair or protect the easement" as long as such maintenance is "necessary" and performed "in a reasonable manner as not to increase needlessly the burden of the servient estate." *Id.* On the other hand, "[t]he owner of a servient estate generally has no duty to maintain or repair an easement for the benefit of the dominant tenant in the absence of an agreement requiring it." 28A C.J.S. Easements § 227; *see also* 25 Am. Jur. 2d Easements and Licenses § 72. Instead, the owner of the servient estate must simply "abstain from acts that are inconsistent with the easement." 28A C.J.S. Easements § 191.

*Hixson v. American Towers, LLC*, 593 S.W.3d 699, 710 (Tenn. Ct. App. 2019).

-14-

Mr. Coolidge acknowledges that easement holders may, when reasonably necessary, enter the servient estate to make repairs. However, he states that "[the Keenes'] proposed course of action regarding the easement will needlessly increase the burden of the servient estate of 1113 Hanover." For their part, the Keenes point out that they have not even submitted plans for rebuilding the garage because of this litigation, let alone imposed any sort of unreasonable burden on Mr. Coolidge. This being so, the issue of whether the Keenes' possible future entry onto Mr. Coolidge's property for purposes of repairing or rebuilding the garage is reasonable or not is a hypothetical question we need not address herein. We decline Mr. Coolidge's request to bar the Keenes in advance from setting foot on his property to undertake work on their easement, which the law allows under the proper circumstances.

We next address the Keenes' separate issues, beginning with whether the Trial Court erred in finding that the driveway portion of the easement is for mutual use. In the 1991 case of *Lowe v. Gulf Coast Dev., Inc.*, this Court noted:

> If an easement is exclusive, the owner of the servient estate loses its right to use the easement along with the easement holder. *Bijou Irr. Dist. v. Empire Club*, 804 P.2d 175, 183 (Colo. 1991); *Stephens v. Dobbins*, 511 So.2d 652, 653 (Fla. Dist. Ct. App. 1987); *Latham v. Garner*, 105 Idaho 854, 673 P.2d 1048, 1050-51 (1983); Restatement (First) of Property § 493 comm. c (1944). Exclusivity will generally not be implied unless it is necessary for the use of the easement. *Capitol Rod & Gun Club v. Lower Colorado River Auth.*, 622 S.W.2d 887, 893-94 (Tex. Civ. App. 1981).

*Lowe v. Gulf Coast Dev., Inc.*, No. 01-A-01-9010-CH-00374, 1991 WL 220576, at *10 (Tenn. Ct. App. Nov. 1, 1991*), no appl. perm. appeal filed*.

The Keenes argue that "[t]he driveway was only wide enough between the two houses to accommodate one car and thus could not physically or practically be a mutual easement." The Keenes state further that "[t]he [Trial Court's] ruling created issues about whether the Keenes can park their vehicles on the driveway." The driveway easement, however, is not a parking easement. It is for egress and ingress. If, for instance, Mr. Coolidge wishes to use the driveway to access the back of his property, that is consistent with the Keenes' rights under the driveway easement, as well as Mr. Coolidge's own rights retained as owner of the servient estate. Neither party may block the other party's use of the driveway. If or when the Keenes repair or rebuild the garage, they may park inside it, but they may not park in the driveway if doing so blocks Mr. Coolidge from accessing the back of his property. Going forward, the parties should cooperate in using the shared driveway and respect each other's rights. We affirm the Trial Court in its conclusion that the driveway easement is for mutual use.

The final issue we address is whether the Keenes should be awarded attorney's fees incurred in this appeal, which they contend is frivolous. "'A frivolous appeal is one that is 'devoid of merit,' or one in which there is little prospect that [an appeal] can ever succeed.'" *Morton v. Morton*, 182 S.W.3d 821, 838 (Tenn. Ct. App. 2005) (quoting *Industrial Dev. Bd. of the City of Tullahoma v. Hancock*, 901 S.W.2d 382, 385 (Tenn. Ct. App. 1995)). Tenn. Code Ann. § 27-1-122 addresses damages for frivolous appeals:

> When it appears to any reviewing court that the appeal from any court of record was frivolous or taken solely for delay, the court may, either upon motion of a party or of its own motion, award just damages against the appellant, which may include, but need not be limited to, costs, interest on the judgment, and expenses incurred by the appellee as a result of the appeal.

Tenn. Code Ann. § 27-1-122 (2017).

Mr. Coolidge made legitimate arguments and cited to relevant law and facts. His appeal was unsuccessful, but not frivolous. The Keenes lost on an issue they raised, as well. We decline to award the Keenes their attorney's fees incurred on appeal. We affirm the judgment of the Trial Court in all respects.

## **Conclusion**

The judgment of the Trial Court is affirmed, and this cause is remanded to the Trial Court for collection of the costs below. The costs on appeal are assessed one-half against the Appellant, John E. Coolidge, Jr., and his surety, if any, and one-half against the Appellees, Elizabeth M. Keene and Christopher P. Keene, II.

_____
D. MICHAEL SWINEY, CHIEF JUDGE

-16-